## MEEKS *v.* OLPHERTS.

1. The statute of California which provides that no action for the recovery of real estate sold by order of a probate court "shall be maintained by any heir or other person claiming under the intestate," unless brought within three years after such sale, applies to the administrator who made the sale as well as to the heirs.

2. When by lapse of time the action is barred against him, it is also barred against them, because the right of possession is, by the law of California, in him, and he represents their interests.

ERROR to the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*Mr. Montgomery Blair* for the plaintiff in error.
*Mr. S. M. Wilson, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This action was brought, Sept. 30, 1872, by Meeks against Olpherts and others to recover possession of a hundred-vara lot in the city of San Francisco.

On a stipulation waiving a jury, the case was submitted to the court, which, on its findings of fact incorporated in this record, further found as a conclusion of law that the plaintiff's action was barred by sect. 190 of the Probate Act of California. Judgment was rendered for the defendants. Meeks sued out this writ of error.

The material facts in the case are few and easily understood.

George Harlan died intestate July 8, 1850, seised of the title to the lot in question, except as that title may have been nominally in the United States. By the act of Congress of 1864 his title was confirmed, and it inured to the benefit of any one rightfully holding under him.

On the 19th of August, 1850, Henry C. Smith was duly appointed administrator of Harlan's estate, and having afterwards resigned, Benjamin Aspinall was appointed in his place, June 15, 1855.

On the seventh day of January, 1856, Aspinall, by an order

of the Probate Court, sold the lot in question, with many others. Under this sale the defendants, or those under whom they claim, entered into possession, which they have held uninterruptedly to the present time. Aspinall remained administrator until May 12, 1864, when he settled up his accounts and was discharged. Joel Harlan and Lucien B. Huff, appointed in his place, are now administrators.

On the 6th of November, 1869, an order of distribution of the estate was made in the Probate Court, by which the lot in question was distributed to plaintiff. To this proceeding no objection is made as to its regularity.

It will thus be seen that the defendants had purchased the lot in controversy at a sale ordered by the Probate Court, and had paid their money for it, and been in the peaceable adverse possession of it since 1856, a period of sixteen years; and the court held that, whether the probate sale was valid so as to confer title or not, the Statute of Limitations applicable to such cases was a bar to plaintiff's right of recovery.

As the only question in the case is the one thus stated by the Circuit Court, and as the Supreme Court of California had decided that the probate sale was invalid and conferred no title, we proceed to examine the defence of the statute.

The special statute of limitations of three years, contained in the Probate Act of California, is as follows: —

" SECT. 190. No action for the recovery of any estate sold by an executor or administrator, under the provisions of this chapter, shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within three years next after the sale.

" SECT. 191. The preceding section shall not apply to minors or others, under any legal disability to sue at the time when the right of action shall first accrue; but all such persons may commence such action at any time within three years after the removal of the disability."

As the plaintiff in this case claims title as heir and by purchase from other heirs of the decedent, and brings his suit sixteen years after an administrator's sale sanctioned by a probate court, it would seem at first blush that the case came within the provision of the first section.

Counsel for plaintiff, however, has argued with much earnestness and force —

1. That no suit could be brought by the heirs, or any one claiming through them, until the order of distribution was made, because until that time, or until administration was closed, the right of possession was in the administrator.

2. That until then the heirs were under a disability, which by sect. 191 protected their right of action from the operation of sect. 190.

The first proposition, and, indeed, the argument of the learned counsel, concedes, that by virtue of the statutes of California the real estate of a person dying intestate comes to the possession and control of his administrator as personal property does, and that while the administrator can only sell real estate upon an order of the Probate Court, the possession and control, the perception of the rents and profits, and the right to sue to recover possession of it when held adversely, belongs solely to the administrator. Indeed, a section or two of the Probate Act, which we copy, makes this very plain.

" SECT. 114. The executor or administrator shall have the right to the possession of all the real as well as the personal estate of the deceased, and may receive the rents and profits of the real estate, until the estate shall be settled, or until delivered over by the order of the Probate Court to the heirs or devisees, and shall keep in good tenantable repairs all houses, buildings, and fixtures thereon which are under his control."

" SECT. 195. *Actions for the recovery of any property, real or personal, or for the possession thereof,* and all actions founded upon contracts, may be maintained *by and against executors and administrators,* in all cases in which the same might have been maintained by or against their respective testators or intestates."

And by section 194 of the Probate Act of California the administrator is again required to " take into his possession all the estate of the deceased, real and personal."

While it must be conceded that no right of action existed in the heirs of Harlan until the order of distribution, the reason of this is that the right of action to recover possession of the lots wrongfully held under the invalid probate sale was in the administrator. He was the representative of the rights of

the heirs and of the creditors of the estate, and as such had the same power to sue for and recover the lot as if he had been the intestate himself. Not only was it his right, but it was his exclusive right and his duty. For any failure to perform this duty he laid himself liable to the heirs, or any one else injured by that failure.

Nor can it be said that either this right or this duty to sue for and recover possession of the lot was lost or abridged by his sale as administrator to the defendants. Instances are numerous of persons making sales that are invalid, avoiding them by the very act of bringing an action of ejectment. Such are the cases of infants and married women who have made conveyances and received the consideration, whose acts are void or voidable by reason of infancy or of defective acknowl edgments of the deeds.

There was, then, up to the date of the order of distribution, or until it was barred by the statute, a right in the administrator of the estate of Harlan to sue for and recover the possession sought in the present action.

This being so, it is not easy to perceive why that right of action was not barred in three years from Jan. 7, 1856, the day on which defendants purchased and took possession. This would make the bar complete Jan. 7, 1859. During all that time Aspinall was administrator and for five years afterwards, and nothing obstructed his legal right to sue for and recover the possession. Nor is the case otherwise if the right of action began with the relinquishment of title by the act of Congress of 1864.

It is argued, however, that sect. 190 does not apply to suits brought by the administrator, and, therefore, the statute does not run against the right of action while it remains in him.

The argument is. that the language used, namely, "no such action shall be maintained by *any heir, or other person* claiming under the deceased testator or intestate," means by an heir or one holding under the heir, and that the words "other person" do not include the administrator.

But no sufficient reason is to be found why it should not. If the administrator can by such an action avoid his own irregu-

lar or void sale, the reason for limiting the time within which it should be done by him is as strong, or perhaps stronger, than it is against another.

It is as important to the purchaser for whose benefit the statute was enacted, that he should be protected against the administrator as against the heirs. The words "other person" mean some one other than the heirs, and instead of meaning some one like the heirs or claiming under the heirs, the words expressly refer to some one "claiming under the deceased testator or intestate." These last words are unnecessary in reference to heirs, for they can claim in no other way but under the intestate. The words "other person," therefore, almost of necessity refer to the administrator, for they can refer to no one but the heirs or some one-claiming under them, or to the administrator.

He is, therefore, within the spirit and the literal meaning of that section, and the bar is good against him. This was decided in the case of *Harlan & Huff* v. *Peck*, in the Supreme Court of California, 33 Cal. 515. Harlan and Peck, as we have already seen, were the successors of Smith and of Aspinall as administrators of George Harlan's estate. They brought suit to recover one of the lots sold by Aspinall at the same time with the sale in question in this case. The defendants relied on the sale and the limitation of sect. 190 of the Probate Act. The court below gave judgment for plaintiffs; but the Supreme Court, while it held the sale void, reversed the judgment, on the ground that this statute of limitations barred the administrator. This is a construction of the statute by the highest court of the State.

The legal disability mentioned in sect. 191 manifestly has reference to a well-known class of persons in whom a right to redress exists, but who for special reasons are incapable of acting for themselves; such as infancy, coverture, and the like. Whatever is a disability under the general statute of limitations is a disability under this statute. Sect. 352 of the Code of Civil Procedure of California describes this class, among which are minors, *femes covert*, insane persons, and persons imprisoned, and it describes them as persons *entitled* to bring an action. The disability cannot have reference to a person in whom no

right of action exists. Such use of the term "disability" is without support in reason or precedent.

The right of action on the title which the plaintiff now asserts was in the administrator, and the statute, therefore, ran against him and against all whose rights he represented. "In all suits for the benefit of the estate he represents both the creditors and the heirs," said the Supreme Court in *Beckett* v. *Selover*, 7 Cal. 215.

Whatever doubt may have existed at one time on the subject, there remains none at the present day, that whenever the right of action in the trustees is barred by the Statute of Limitations, the right of *cestui que trust* thus represented is also barred. This doctrine is clearly stated in Hill on Trustees, 267, 403, 504, and the authorities there cited fully sustain the text, both English and American.

Among those specially applicable to this case are *Smilie* v. *Biffle*, 2 Pa. St. 52; *Couch's Heirs* v. *Couch's Administrator*, 9 B. Mon. (Ky.) 160; *Rosson* v. *Anderson*, id. 423; *Darnall* v. *Adams*, 13 id. 273.

In the first of these cases, land was devised to executors, with a power of sale, which was imperfectly executed, by one of the executors alone. The legatee brought suit against the purchaser, and was held to be barred by the Statute of Limitations. After referring to the old opinion, and expressing surprise that it should ever have been entertained, and showing how it was overruled by Lord Hardwicke in *Lewellen* v. *Mackworth* (2 Eq. Cas. Abr. 579), the court says: "Therefore, where *cestui que trust* and trustees are both out of possession, for the time limited, the party in possession has a good title against both. By the terms of the will, the trustee had the right to enter on the land, to take the rents, issues, and profits, and apply the same to the separate use of Jane Craig, the testator's daughter, during her natural life, with power to sell the fee-simple and appropriate the interest of the purchase-money to her use, and after her death to be paid to certain legatees, of whom the present plaintiff was one. The property was sold in the lifetime of Jane Craig; but the sale was the act of but one of the trustees, and it is contended that the execution of the joint trust must be the act of all. In this respect, the title of Nicholson, the pur-

chaser, is manifestly defective. But Nicholson took possession of the premises in pursuance of the contract, and held the same for upwards of twenty-one years. He, therefore, held adversely to both *cestui que trust* and trustee, and consequently obtained by the Statute of Limitations an indefeasible title, which cannot now be disturbed or gainsaid."

In the case of *Rosson* v. *Anderson* (*supra*), the question related to the title of slaves conveyed by a father to a trustee for his daughters. The trustee did not accept the trust, nor were the slaves ever delivered by the donor.

One of the granddaughters, after her father's death, which occurred while she was a minor, brought suit for the slaves, and was met by a plea of the Statute of Limitations, to which she replied her infancy. The court held that the right of action, on the death of her father, vested in his executors, and, as more than five years had elapsed after they had qualified as such, the statute was a bar against them, and as they would have been barred by the statute, so was the heir, though a minor when the cause of action accrued.

In *Darnall* v. *Adams* (*supra*), which concerned a devise of slaves, the same court held that the disability of coverture in the devisee could not prevent the running of the Statute of Limitations in favor of an adverse possession against the executor, and that it was well settled that the claim of the devisee is, under such circumstances, barred by the lapse of time which bars the executor. *Coleman* v. *Walker, &c.,* 3 Metc. (Ky.) 65, and *Edwards* v. *Woolfolk's Administrator,* 17 B. Mon. (Ky.) 376, are cases which assert the same doctrine, and in the latter the principle is fully and ably discussed and its soundness well maintained.

A very strong case of the same character is that of *Croxall* v. *Sherrard* (5 Wall. 268), where a remainder-man was held barred by the Statute of Limitations of New Jersey, on account of the number of years of possession of defendant under purchase from the holder of the estate for life, all of which had elapsed during that life. This was held to be a bar, though the remainder-man brought suit immediately on the death of his ancestor. This was, however, based on the peculiar wording of that statute.

In *Cuningham* v. *Ashley* (45 Cal. 485), it was held that an administrator, who is a party to a suit which involves the title of his intestate to real estate, represents the title which the deceased had at the time of his death, and the judgment in such action concludes the adverse party and the heirs of the intestate. And such judgment is an estoppel as to the title set up in the action.

On the whole, we are of opinion, both upon sound principles of construction, as well as upon the decisions of the Supreme Court of California construing the statute of the State, that the Circuit Court was justified in holding that the plaintiffs were barred by the adverse possession of defendants.

*Judgment affirmed.*