JOHN A. JENKINS, JR., Appellant, v. MARY E. JENSEN and THOMAS QUAYLE, Respondents.

No. 1320.   (66 Pac. 773.)

1. **Statute of Limitations: Persons Barred: Administrator: Minor Heir: Disability of Infancy.**
   Compiled Laws 1876, page 301, section 107, gives the administrator the right to possession of all real estate until settlement of the estate. Section 183, page 319, requires him to take possession of the real estate of deceased. Section 179, page 319, provides that no action to recover any estate sold by an administrator shall be maintained by any heir or other person claiming under a testator or intestate, except within two years next after the sale. Section 180 exempts minors and others under disability until within two years after removal of the disability. Compiled Laws 1876, page 365, section 13, relating to the commencement of actions for recovery of real property, excludes the period of such disabilities in computing the time since the accrual of the cause of action. *Held,* that where an administrator neglected to bring

Jenkins v. Jensen and Quayle.

an action to recover real property within the time prescribed
by the statute, the heir of the intestate was also barred, though
he was a minor at the accrual of the action in favor of the ad-
ministrator.

4, Same: Failure of Administrator to Sue: Heir's Remedy.
   Where an administrator neglects to bring a suit to recover real
   property within the prescribed period of limitation, whereby a
   minor heir is barred, the heir has a right of action against the
   administrator and his bondsmen.

2. Same: Limitations Against Trust: Extent of Rule.
   The rule that limitations do not run against a trust, holds only be-
   tween *cestui que trust* and trustee, and does not apply to a *ces-
   tui que trust* and trustee, as against third persons.

3. Same: Adverse Possession Against Administrator Bar
   to Action by Heir.
   Under 2 Compiled Laws 1888, sections 3131-3134, 3140, prescribing
   the time of commencing actions for recovery of real property,
   adverse possession under claim of title for more than seven years
   against an administrator entitled to sue for recovery of the
   property will bar an action to quiet title therein brought by an
   heir who was under disability at the time the cause of action
   accrued.

6. Same: When Posthumous Heir Barred.
   Where limitations began to run against an administrator by reason
   of adverse possession of land, a posthumous heir of the intestate
   born after the administrator's appointment, could not avail him-
   self of the disability of infancy to stop the running of the statute.

5. Same: Contract: Construction Given by Parties.
   A father conveyed land in trust to his son. The son failed to take
   possession or to carry out the provision of the trust. On the
   son's death his administrator and plaintiff's guardian both join-
   ed in an executory agreement with all others interested in the
   land, whereby title to the land was to remain in the son's estate
   and descend to his heirs, subject to certain charges thereon. On
   plaintiff's arrival at the age of twenty-one years, the title to the
   land was to vest in him and his heirs forever. The agreement was
   not fully carried out or adopted by all the parties, and a second
   agreement, expressly abrogating the first, was reached by the
   same parties, whereby, for a valuable consideration, the land was
   conveyed to the father and his wife. The administrator, on
   behalf of plaintiff, the son's minor heir, accepted the considera-

tion. The father and his grantees subsequently held undisputed title to the property for eighteen years. Neither the son's administrator, nor plaintiff's guardian ever made claim thereto. *Held*, that, under the construction given to the contracts by the parties thereto, plaintiff was not entitled to the land by virtue of the first agreement.

(Decided December 5, 1901.)

Appeal from the Third District Court, Salt Lake County.— *Hon. W. C. Hall*, Judge.

Action to quiet title to a certain piece of real estate. Defendants denied plaintiff's allegations of title and set up as a defense the statute of limitations, estoppel, family compromise and settlement, and want of consideration. From a decree in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*Messrs. Pierce, Critchlow & Barrette* for appellant.

The first agreement was a family settlement. Courts of equity uphold such settlements with a strong hand. 12 Ency. (2 Ed.), 875; In re Ralston Estate, 172 Pa. St. 104, 33 Atl. 273; Adams v. Adams, 70 Iowa 253, 30 N. W. 798; Cruger v. Douglas, 4 Ed. Ch. 433, 533.

No subsequent agreement or unauthorized action of the guardian can deprive the minor of his property. The legal and beneficial title to the real and personal property remains in the ward, which the guardian can in nowise bind by any promise or contract of his own. Woerner on Guardianship, sec. 53. Hence it is not within the authority of a guardian to avoid a beneficial contract or to waive any benefits to which his ward is entitled. Woerner on Guardianship, sec. 53.

A guardian can not bind his ward by admission of facts not proved or by suffering judgment by default (Woer-

ner on Guardianship, sec. 53, p. 174), nor bind the infant by a consent decree. Bearinger v. Pelton, 78 Mich. 114.

Independent of statute, a guardian has no power, without special authorization thereto by a court of competent jurisdiction, to sell his ward's real estate. Woerner on Guardianship, sec. 54.

The guardian could not even assent to a partition (Session Laws 1880, p. 77), nor compromise. Any compromise without the consent of the court is voidable. Woerner on Guardianship, sec. 56, p. 184. See, also, generally Richardson v. Richardson, 49 Mo. 29; Antonidas v. Walling, 4 N. J. Eq. 42, 31 Am. Dec. 248.

The plaintiff is not barred by the statute of limitations. We believe the court ought to decide that the statute of limitations did not begin to run against the minor's estate until he was entitled to possession on becoming of age. Furthermore, an infant is not barred from asserting his right when he becomes of age, on account of the failure of his guardian to bring suit during the minority of the infant. Monroe v. Simmons, 86 Ga. 344, s. c., 12 S. E. 643; 13 Ency. (1 Ed.), 740; Moore v. Wallis, 18 Ala. 458; Christian v. Westbrook, 75 Ga. 852; Grimsby v. Hudnell, 76 Ga. 378; Bacon v. Gray, 23 Miss. 140; Frost v. Ry., 64 N. H. 220; Alvis v. Oglesby, 87 Tenn. 172; 2 Wood on Limitations, sec. 238.

*Messrs. Bennett, Howat, Sutherland & Van Cott* and *George L. Nye, Esq.,* for respondents.

The plaintiff's alleged cause of action was barred by the statute of limitations of the State of Utah before the institution of this suit. The law is well settled that the statute of limitations runs as between a stranger on the one side and the *cestui que trust* on the other, but does not ordinarily run as between the trustee on one side and the beneficiary on the

other.   McLeran v. Benton et al., 73 Cal. 329; Meeks v. Olpherts, 100 U. S. 564.

It is well settled that if an administrator or trustee lets the statute of limitations run so that a minor is barred of his rights, the latter has an action against the administrator and his sureties.   100 U. S. 566-7; McLaren v. Benton, 73 Cal. 343.

The plaintiff is barred by reason of the compromise that was made as evidenced in the agreement and deed of 1881, by which Thomas Jenkins and Ann Jenkins gave up all claim to lots two and three and the administrator and guardian gave up all claim to lots one and sixteen.

Compromises are favored by the law and by the courts, and are upheld whenever they are fair and reasonable.   13 L. R. A. 601, and note.   And in particular, family compromises are favored and upheld with a strong hand—upheld in cases where they would not be as between strangers.   1 Story Eq. Jur., sec. 132.

The plaintiff confirms the compromise agreement of 1881 by retaining possession of lots two and three and asserting title thereto; besides he can not repudiate a contract made for his benefit without restoring the property in his possession obtained by the compromise.   Buchanan v. Hubbard, 21 N. E. 538; Reynolds v. McCurry, 100 Ill. 356.

The plaintiff in this case is estopped to claim lots one and sixteen.   Whitney v. Fox, 166 U. S. 637.   When parties to a contract are estopped, their privies are also estopped.   19 Ency. Law (1 Ed.), 156; 2 Herman on Estop., secs. 800-1; Smith v. Lusk, 24 So. 256-8.

STATEMENT OF FACTS.

This action was brought by John A. Jenkins, Jr., the plaintiff and appellant, to quiet title to lot 16, block 22, 10-acre plat A, Big Field survey, in Salt Lake City.   The de-

fendants denied plaintiff's allegations of title, and set up as a defense the statute of limitations, estoppel, family compromise and settlement, and want of consideration. The trial court found the issues in favor of the defendants, and made its decree accordingly. The plaintiff appealed from the decree.

It appears from the evidence and findings, in substance, that on July 16, 1875, one Thomas Jenkins purchased and continued to occupy lots 1, 2, 3, and 16, block 22, 10-acre plat A, known as the "40-acre tract." He was at this time the owner and in possession of 125 acres in section 14. For more than thirty years said Jenkins had been a member of the Mormon Church, and believed in the right of having a plurality of wives. He then had a legal wife named Ann Jenkins, to whom he was married in 1851, and by whom he had eight children. John A. Jenkins, the father of the plaintiff, was his eldest son by his lawful wife. He also had a plural wife, named Mary R. Jenkins, to whom he was married in 1855, and by whom he had eleven children. On March 2, 1876, Thomas Jenkins, desiring to provide a support and maintenance for Ann and Mary R. Jenkins and their families in case of his death, conveyed the 40-acre tract, embracing lot 16 in question, to Mary R. Jenkins, and the 129-acre tract to Ann Jenkins. At the time of these conveyances it was verbally agreed by the parties that Thomas Jenkins was to manage and occupy said land during his lifetime, and the grantees were to take possession at his death. On April 5, 1877, Ann and Mary R. Jenkins agreed to exchange the respective tracts of land, with the consent of Thomas Jenkins, each conveying to the other the land so conveyed to her; and thereupon Ann conveyed the 129-acre tract to Mary R., and Mary R. was about to convey the 40-acre tract to Ann, when, at the request of Ann, and with the consent of Thomas Jenkins the deed to Ann was changed and made to

24 Utah—8

John A. Jenkins, the eldest son of Ann and Thomas Jenkins, now deceased, who knew all the facts, and who took the deed for the 40-acre tract subject to the former agreement of the parties, without paying any consideration therefor, and agreeing that Thomas Jenkins was to hold, manage, and occupy the 40-acre tract during his lifetime, and at his death the said John A. Jenkins was to take possession thereof, and, without other consideration, was to keep and support his mother during her life, and also his sisters Alice and Anna during their minority, and until they should severally marry, and also support Mary Bundy, an aged lady dependent upon Thomas Jenkins for support.   John A. Jenkins lived at home with his father, and in 1878 he married Minnie R. Jenkins, and on September 25, 1879, he died intestate, without issue; but thereafter, on December 8, 1879, the said Minnie R. Jenkins bore a son begotten by John A. Jenkins, named John A. Jenkins, Jr., who is plaintiff in this action.   He became twenty-one years of age on the eighth day of December, 1900.   John A. Jenkins, deceased, never took possession of the 40-acre tract, and never supported said Alice, Anna, or Mary E. Bundy, as agreed, or in any manner.   Thomas Jenkins and his successors in interest and grantees have always held possession of lots 1 and 16 of the 40-acre tract from the time Thomas acquired it to the time of the trial.   Said John A. Jenkins, deceased, left surviving him his wife and the plaintiff, as his only heirs.   John S. Barnes was duly appointed administrator of the estate of John A. Jenkins on the third day of November, 1879, thereafter duly qualified, and from thence hitherto has acted as such administrator.   On September 27, 1880, Barnes, as administrator, by his attorney, Mr. Kaign, filed a complaint (No. 4592) against Thomas Jenkins and his tenant, and therein represented, among other things, that John A. Jenkins, deceased, was seized in fee of said 40-acre tract, and that defendant was withholding possession of the same from him to his damage in the sum of $500, and also

claimed that the rents, issues, and profits of said land were $600 per annum, and prayed for judgment. Thomas Jenkins answered, and set up the facts heretofore stated, and asked that the deed to John A. Jenkins be cancelled, and the title decreed to be in Ann Jenkins and her heirs, subject to the right of Thomas Jenkins to occupy the said tract during his life. Soon thereafter the administrator, by his attorney, filed a second complaint against Thomas Jenkins (No. 4544), claiming that the defendant had appropriated certain personal property belonging to the estate, valued at $1,600.

On October 6, 1880, Thomas Jenkins filed an action (No. 4557) in the district court against Barnes, the administrator, wherein he sought to recover upon a note given him by John A. Jenkins, deceased, for $1,000. The administrator answered, denying the allegations of the complaint, and set up a counterclaim. On the thirtieth day of October, 1880, Mary R. Jenkins, the mother, was appointed guardian of the person and estate of John A. Jenkins, Jr., duly qualified, and has continued to act as such guardian. On November 26, 1880, Thomas Jenkins, Ann Jenkins, John S. Barnes, as administrator, Minnie R. Jenkins, and Alice and Anna Jenkins entered into an agreement in writing in substance as follows: That in consideration of the premises, the mutual benefits to the several parties accruing, and the mutual covenants, agreements, and stipulations hereinafter set forth, all parties agree as follows: (1) That the title to the said 40-acre tract, herein described as lots 1, 2, 3, and 16, and the water belonging to the same, is and shall remain in the estate of said John A. Jenkins, deceased, and shall descend to his heirs, with the following limitations, restrictions, and conditions, to-wit: That in consideration of the sum of $300 per annum, to be paid by Thomas Jenkins quarterly, he shall have the use of said tract during his lifetime, or until the coming of age, or marriage sooner, of said John A. Jenkins, Jr., when said possession shall cease. That said sum of $300 shall be equally divided between

Ann Jenkins, Mary Bundy, John A. Jenkins, Jr., Anna Jenkins, and Alice Jenkins, and the survivor of them: provided, that the shares of Alice and Anna Jenkins shall cease and pass to the other beneficiaries upon their arrival at the age of twenty-five years, or marriage sooner. That upon the arrival of said John A. Jenkins, Jr., at the age of twenty-one years, the title to said tract of land shall vest in him and his heirs forever. Should said John A. Jenkins, Jr., die during minority, leaving no issue, full title to said land shall pass to said Minnie R. Jenkins and the heirs of her body forever, subject to the use thereof by Thomas Jenkins for the time and on the terms and conditions aforesaid. That, should said Minnie R. Jenkins die without lineal descendants, said land shall revert to said Thomas and Ann Jenkins and their heirs. That, should Ann Jenkins be living when John A. Jenkins becomes of age, she shall receive during her lifetime one-half the net proceeds of said land. (2) The estate of John A. Jenkins waives all claims to articles and items named and described in said action No. 4544, and agrees to accept and receive in lieu thereof the sum of $200, to be paid by said Thomas Jenkins. The estate also waived all claims for rents and damages arising in case No. 4542 in the district court. Thomas Jenkins waives all claims and demands set up in action No. 4557, and accepts in lieu thereof a credit of $500 on his note for $1,500 held by said estate, and the surrender to him of a note of John S. Houtz held by said estate. That all of said suits shall be dismissed on the approval and satisfaction by the probate court of the agreement and performance of the conditions therein specified, and the entering into agreement for the performance of the further conditions. This agreement was confirmed by the probate court in January, 1881, and the order required the parties to enter into an agreement for the due performance of the further conditions. No agreement was thereafter entered into for the due performance of such further conditions

of the contract as specified therein, and no full performance of the conditions thereof was made.

The agreement of November 26, 1880, did not settle the disputes between the parties, but the old animosities, ill-will, and turmoil theretofore existing between the parties continued to exist unabated, and the terms and conditions of the agreement were not fulfilled. Some of the litigation was thereafter continued, until finally, on September 1, 1881, Minnie R. Jenkins, in person and as guardian of the plaintiff, and John S. Barnes, as administrator of the estate of John A. Jenkins, deceased, as parties of the first part, for a valuable consideration, made and delivered to Ann Jenkins and Thomas Jenkins, as second parties, an agreement or deed reciting, in substance, the facts hereinbefore stated, and also the fact that Ann Jenkins claimed the 40-acre tract; that litigation and disputes existed; that John A. Jenkins held title to the 40-acre tract as trustee until certain conditions were performed; that the agreement made by parties in November, 1880, with a view to settling the difficulties, and whereby the income of the land, amounting to $300 per year, was to be equally divided between John A. Jenkins, Jr., Anna and Alice Jenkins, Ann Jenkins, and Mary Bundy, was not approved by the probate court as a condition precedent to the ratification of the same; that the parties disagreed as to its meaning and terms; and that the same was never wholly adopted by the parties thereto. Thereafter it was stipulated and agreed therein that: "This said agreement is upon the condition that whatever rights Anna, Alice, Ann Jenkins, and Mary Bundy have in the agreement of November 26, 1880, are hereby made a charge upon the one-half of said 40-acre tract hereby in this agreement conveyed; that no liability shall exist, arise, or remain on said agreement against the parties of the first part, or the estate of John A. Jenkins, deceased, or either of them, or upon the twenty acres conveyed to them, for any part of said $300, or any support for said Anna, Alice, and Ann Jenkins or Mary

Bundy; that in consideration of the premises, and of the advice and approval of counsel on both sides, and for the purpose of settling litigation, it is hereby agreed to cancel and make void said agreement of 1880, and to settle said controversy by dividing said land giving one half to Ann Jenkins, and the other half to John A. Jenkins and his mother, Minnie R. Jenkins, they to take in the same proportion as they would inherit from the said husband and father under the law, and, for a further consideration to induce said settlement, the said second parties agree to give to the estate of John A. Jenkins $500. Therefore, in consideration of the premises, and of the full and complete relinquishment of the said parties of the second part of the whole of said lots 2 and 3, and for the sum of $500 to the said estate of deceased, John A. Jenkins, in hand paid, and for the full relinquishment of the water rights belonging thereto, and for other good and valuable consideration, have granted, bargained, and sold, and by these presents do grant, bargain and sell, and convey, unto the said Ann Jenkins, on condition of all charge under said agreement or otherwise for the support of said Alice, Anna, and Ann Jenkins and Mary Bundy, as heretofore stated, and for their share of the $300 being released from the land conveyed to parties of the first part; and the parties of the second part by accepting this deed or agreement do covenant that they will protect and save harmless the said parties of the first part against any claim of Alice, Anna, and Ann Jenkins and Mary Bundy upon said twenty acres conveyed to the parties of the first part, or the income thereof, and do charge said claim of the persons last named upon the twenty acres hereby conveyed (said lots 1 and 16) with and including all the estate, right, title, and interest and claim of the said minor John A. Jenkins, and the said Minnie R. Jenkins, or the said administrator, of, in, and to said lots so granted, or intended to be, with the appurtenances thereto belonging. To have and to hold the said granted and conveyed premises unto

the said Ann Jenkins and her heirs and assigns forever; and
the said parties of the first part hereby covenant to warrant
and defend the title of said parties of the second part against
any claim, right, or interest of John A. Jenkins, Jr., his heirs,
or assigns, to the said twenty acres hereby conveyed [which
embraced lots 1 and 16]." This agreement was acknowledged
and recorded October 18, 1881. The agreement of September
1, 1881, was made to compromise and settle existing difficul-
ties, and all the parties were represented by their counsel and
had the advice of their friends in securing such settlement.
Since said last settlement no disputes have arisen between the
parties until the commencement of this action. After such
last settlement Thomas Jenkins paid the administrator, for the
use of the estate, for the minor heir, the appellant, $500 men-
tioned in the last agreement, which sum was accepted by the
administrator of the estate in full payment under the terms
of said agreement. Since said last settlement Thomas Jen-
kins has remained in possession of lot 16, and the administra-
tor or guardian has in no manner interfered with such pos-
session; and Ann and Thomas Jenkins have made no claim
to lots 2 and 3, but have complied with such agreement made
September 1, 1881. The suit of Jenkins against Barnes and
Butterworth was dismissed in March, 1881. The suit of
Barnes, administrator, against Jenkins, in ejectment (No.
4542), was not dismissed until February 9, 1881. The suit
of Barnes, administrator, against Jenkins (No. 4544), has
not been dismissed. Thomas Jenkins is now 71, and Mary
R. Jenkins is 66 years of age. Mary Bundy died February
12, 1886. William Butterworth died several years ago. Many
witnesses for the parties are now deceased, or have become
infirm in memory. Anna Jenkins married August 10, 1882.
Alice Jenkins married September 12, 1885. Ann Jenkins
died November 12, 1886. Immediately after the second agree-
ment was made, lots 2 and 3 were turned over to Minnie R.
Jenkins, and she and appellant have had possession of them

ever since. Thomas and Ann Jenkins and their grantors have been in the continued possession of lots 1 and 16 since 1857, which possession since 1881 was founded on said agreement of September 1, 1881, under a claim of title exclusive of any other right, and so continued such occupancy until they conveyed the same; and their grantees so continued to hold and occupy the same thereafter openly, peaceably, and exclusively, and each, respectively, has paid the taxes thereon since 1857. Said land was inclosed with a substantial fence. Thomas and Ann Jenkins conveyed lots 1 and 16 to Bolivar Roberts in 1882 for $2,500. Roberts in 1896, in consideration of the sum of $5,000, conveyed the same to Mary E. Jensen, who is now in possession; and she on November 19, 1900, executed a mortgage to the defendant Quayle in the sum of $1,000, for money borrowed, which debt is still unpaid. In September, 1886, the administrator filed in the probate court a sworn petition stating that the only real property belonging to the estate of John A. Jenkins, deceased was said lots 2 and 3, and procured an order of sale thereof, after which he filed his sworn final accounting and petition for distribution, wherein the same facts were stated, but no order was made; and the estate of John A. Jenkins, deceased, has never been closed.

MINER, C. J., after stating the facts, delivered the opinion of the court.

The appellant contends that the title to lots 1 and 16 became absolutely vested in him by virtue of the agreement of November 26, 1880, and that he was entitled to the possession thereof on December 8, 1900—that being the date he arrived at the age of 21 years—and that neither the administrator nor guardian obtained any authority to enter into the second agreement. The respondents claim (1) that appellant's cause of action was barred by the statute of limitations of this State long before the institution of this action; (2) that plaintiff is barred by reason of the compromise made in 1881, by

which Thomas and Ann Jenkins gave up claim to lots 2 and 3, and the administrator and guardian thereafter gave up all claim to lots 1 and 16; (3) the compromise of 1881 was affirmed by the appellant and his representatives by retaining possession of lots 2 and 3, and asserting title thereto, without any offer to return the same; (4) plaintiff is estopped from claiming the property.

A careful examination of the statement of facts heretofore presented, and the findings of the trial court thereon, will show that John A. Jenkins, deceased, never entered into possession of the 40-acre tract after obtaining the deed from Mary R. Jenkins, nor did he ever claim to own the property, but, on the contrary, asserted that it was not his property; that he held it for his mother and sisters. The administrator never had possession of the 40-acre tract, including lots 1 and 16. The agreement of 1881 tends to show that the administrator and the guardian (the mother of the plaintiff), in conveying away lots 1 and 16, knew that the same were being held and claimed adversely to them by other claimants. These lots are not mentioned as belonging to the estate in the inventory of the property by the administrator in his petition for sale and distribution of the same as required by the Compiled Laws of Utah of 1876 (page 310, section 145). The testimony and findings show that Thomas Jenkins and his successors and grantees have had the exclusive possession of said land since 1875, and since 1881 have had the exclusive, continuous, adverse, notorious, and peaceable possession of said tract, up to the time this action was commenced, and during that time have paid all the taxes thereon, cultivated the same each year, and inclosed the same with a fence. Under the statutes of Utah in force in and since 1881, the administrator had the exclusive right to the possession of real property belonging to the estate until the final order of the court, and had the right to bring suit to recover any real property belonging to the estate held adversely by others. By the Laws of 1884 pos-

session of the heir is made subject to the possession of the administrator for the purpose of administration. Comp. Laws 1876, p. 301, sec. 107; Id. p. 319, sec. 183; Id. p. 320, sec. 184; Laws 1884, p. 404, sec. 10; Id. p. 429, sec. 2; 2 Comp. Laws 1888, p. 486, sec. 10; Id. p. 489, secs. 1, 2, 3; Rev. St. 1898, secs. 3912-3914; Comp. Laws 1876, p. 402, sec. 6; Laws 1884, p. 192, sec. 226; Rev. St. 1898, sec. 2902; Comp. Laws 1888, sec. 3171.

The principal question for consideration, therefore, is whether the statute of limitations could have run against the plaintiff when he became of age, on December 8, 1900. In the consideration of this question, it must be remembered that this is not an action between the administrator and guardian, on the one side, and one claiming as heir, on the other, but is an action between one claiming as heir to an estate, on the one hand, and strangers to the estate, on the other. By the provisions of section 107, p. 301, Compiled Laws 1876, the administrator has the right to the possession of all real estate until the estate be settled, or is otherwise dispossessed by order of the court. By section 183, p. 319, Compiled Laws 1876, the administrator is required to take possession of all real estate of the deceased. For the purpose of bringing suits to quiet title the possession of the administrator is deemed the possession of the heir. Possession of the heir is made subject to the possession of the administrator for the purpose of administration. Laws 1884, p. 404, sec. 10; Laws 1884, p. 429, sec. 1. Section 179, p. 319, Compiled Laws 1876, reads as follows: "No action for the recovery of any estate, sold by an executor or administrator under the provisions of this act, shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within two years next after the sale." Section 180: "The preceding section shall not apply to minors or others under any legal disability to sue at the time when the right of action shall first accrue; but all such persons may

commence such action at any time within two years after the removal of the disability." Section 13, p. 365, Compiled Laws 1876, provides as follows: "If a person entitled to commence any action for the recovery of real property, or for the recovery of the possession thereof, or to make any entry or defense founded on the title to real property, or to rents or services out of the same, be at the time such title shall first descend or accrue, either, first, within age of majority, or second, insane. . . . The time during which such disability shall continue shall not be deemed any portion of the time in this act limited for the commencement of such actions, or the making of such entry or defense, but such action may be commenced or entry or defense made within the period of two years after such disability shall cease, or after the death of the person entitled, who shall die under such disability, but such action shall not be commenced or entry or defense made after that period."

In the case of McLeran v. Benton, 73 Cal. 329, 14 Pac. 879, 2 Am. St. Rep. 814, a similar question, under a like statute in California, was determined. The question was raised whether the plaintiffs, infants, were barred on account of the executor being barred; and the court held that the statute of limitations had run against the infants, notwithstanding their infancy, because the executor representing them was barred. The court said: "If the entry of the defendants was wrongful, the devisees of Harmon could not maintain an action, for that right existed exclusively in the executors, who, in all suits for the benefit of the estate, represented both the creditors and the heirs. (Cunningham v. Ashley, 45 Cal. 493; Halleck v. Mixer, 16 Cal. 579.) It would seem to follow, therefore, that when the executor is barred of his action the heir is barred, although the heir or devisee be laboring under a disability. (Wilmerding v. Russ, 33 Conn. 68.) The general rule is that when a trustee is barred by the statute of limitations the *cestui que trust* is likewise barred, even though an

infant (Hill, Trustees, 267, 403, 504), and that the heir or devisee is dependent upon the diligence of the executor for the maintenance of his rights with respect to the real property, but is not without a remedy by an action for damages against his executor and his sureties, or by a proper proceeding to compel him to bring suit. (Tyler v. Houghton, 25 Cal. 29.) This subject has been very carefully considered, and the decisions and statutes of this State elaborately reviewed, by the circuit court and the Supreme Court of the United States and the conclusion reached that, where the administrator in this State neglects to bring an action to recover property of the estate until it is barred under the statute of limitations applicable to the subject, the heir is also barred, even though the heir be a minor at the time the action accrues to the administrator. Meeks v. Vassault, Fed. Cas. No. 9393 [3 Sawy. 206]; Meeks v. Olpherts, 100 U. S. 564, 25 L. Ed. 735." In the case of Meeks v. Olpherts, 100 U. S. 564, 25 L. Ed. 735, suit was brought to recover decedent's property sold by the executor, on the ground that the sale was void; and the question of the statute of limitations was raised, as affecting the right of the infant to sue under a statute like that of Utah. In its opinion the court calls attention to the fact that the administrator had the right to the possession of all the property, and was the only person and the proper party to bring the action to recover the real estate, and that, as more than three years had elapsed without suit being brought by the administrator, the *cestui que trust,* although a minor, was barred, because the right to commence the suit was in the administrator, and if he did not sue within the required time all persons under him were barred. The court said: "The right of action on the title which the plaintiff now asserts was in the administrator, and the statute therefore ran against him and against all whose rights he represented. 'In all suits for the benefit of the estate he represents both the creditors and the heirs,' said the Supreme Court in Beckett v. Selover, 7 Cal. 215, 68 Am. Dec. 237. What-

ever doubt may have existed at one time on the subject, there remains none at the present day, that whenever the right of action in the trustees is barred by the statute of limitations the right of the *cestui que trust* thus represented is also barred. This doctrine is clearly stated in Hill, Trustees, 267, 403, 504, and the authorities there cited fully sustain the text, both English and American." In a note to Moore v. Armstrong, 36 Am. Dec. 68, where many authorities are cited to support the text, it is said: "There is also a diversity of opinion on the question as to how far the rights of an infant are affected when his property is in the hands of a trustee, executor, or guardian; and the tendency of the decisions is to support the position that when the right of action vests in an executor, guardian, or trustee, who is under no legal disability, the statute will commence to run despite the disability of the minor, and, if the claim is lost by the neglect of the representative to sue, the minor is barred."

From the above authorities it is apparent that where the executor, administrator, or trustee has a right to sue, and omits that duty, the beneficiary is then barred, and his remedy is against the administrator or his bondsmen. In Patchett v. Railway Co., 100 Cal. 505, 35 Pac. 73, the court laid down the same rule announced in Moore v. Armstrong, supra. In the opinion in that case it is said: "The rule that the statute of limitations does not bar a trust estate holds only between *cestui que trust* and trustee, not as between *cestui que trust* and trustee on one side, and strangers on the other; for that would make the statute of no force at all, because there is hardly any estate of consequence without such trust, and so the act would never take place. Therefore, where the *cestui que trust* and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both. . . . Where the trustee is barred, so is the *cestui.*" 13 Am. and Eng. Ency. Law, 740. In Dennis v. Bint, 122 Cal. 40, 54 Pac. 378, 68 Am. St. Rep. 17, the ques-

tion was presented whether the heirs were barred because the administrator was barred, and the court said: "The result of the cases involving or illustrating the effect of these sections, in their original form, is that, if the administrator failed to sue to recover the land or set aside the sale within three years next following the sale—the administration so long continuing—then the heirs as well as himself were barred, even though the heirs were minors; this on the ground that under our system the administrator represents the heirs; he, the trustee; they, the *cestuis.*" In this decision the administrator is held to be the trustee, and the heirs the *cestuis;* and this under statutes like those of Utah. In 27 Am. and Eng. Ency. Law (1 Ed.), 98, 100, the general rule is laid down that the statute of limitations runs as between the administrator and the heirs, on the one side, and strangers, on the other, although ordinarily the statute does not run between the trustee or administrator, on the one side, and the beneficiary, on the other. In the present case the administrator had the exclusive right of possession, with a right to sue, which, for the purposes of administration, gave him the legal title until devested by distribution or by order of the court. The estate in question is still in the hands of the administrator, and he has never taken possession of the property in dispute, but the same has remained in the peaceable possession of Thomas Jenkins and his grantees since 1875, without interference on the part of the administrator since the agreement of 1881. John A. Jenkins never took possession of the lots in question under his deed, and claimed no ownership therein, except as trustee for his mother and sisters. Ann Jenkins and Thomas Jenkins continued in possession of the 40-acre tract on September 1, 1881, when the last agreement was made between the parties, and previous to that date, from 1875, continued in possession of said lots 1 and 16 under claim of title founded on said agreement of September 1, 1881, exclusive of any other right whatever, and so continued until they conveyed them in 1882

Jenkins v. Jensen and Quayle.

to the grantors of the defendants herein, who have held possession thereof since 1896, being a continuous, undisputed, peaceable possession in them and their grantees for more than eighteen years previous to the time of the commencement of this suit, during all of which time the administrator has not only failed to take proceedings to recover possession, but has personally and officially assented to the ownership and possession thereof by the defendants and their grantors since the time of his appointment, in 1879, knowing at that time and since that Thomas and Ann Jenkins and their grantees were in possession claiming title to the land.   Irrespective of other considerations presented in the record we are of the opinion that, under the facts disclosed, the right of possession being in the administrator, the rule that the statute of limitations does not bar a trust estate holds only between the *cestui que trust* and trustee, and not as between the *cestui que trust* and trustee, on the one side, and strangers, on the other.   The defendants in this action were strangers to the estate, and they and their predecessors in interest and grantors having held lots 1 and 16 adversely, under a claim of title, and under the requirements of the statute, for more than seven years, their title must be held quieted and freed from the assumed ownership and claim of the plaintiff.   Comp. Laws Utah 1876, pp. 363, 364, secs. 4-6; Id. p. 365, sec. 13; Laws 1884, pp. 184-186, secs. 179, 180, 182, 183, 188; 2 Comp. Laws 1888, secs. 3131-3134, 3140.   Under the circumstances disclosed, if an administrator or trustee allows the statute of limitations to run so as to bar his rights as such, he lays himself liable to the heir or any one else injured by his failure to perform his duty.   Meeks v. Olpherts, 100 U. S. 564, 25 L. Ed. 735; McLeran v. Benton, 73 Cal. 329, 343, 14 Pac. 879, 2 Am. St. Rep. 814.

The appellant claims that the legal title to the lots in question was vested in him by virtue of the agreement of 1880. The court found, and the facts show, that the agreement was

made to settle the disputes existing between the parties, but that the ill feeling and animosities continued to exist unabated until the agreement of 1881 was made, when the disputes ceased, and the agreement was accepted by the parties until this suit was brought. By the agreement of 1880 the parties were to enter into an agreement for the due performance of the further conditions named therein, but no agreement for due performance of such further conditions named was ever entered into, and the disputes still continued until the agreement of 1881 was made. It was therein stated that owing to the non-approval of the probate court, and the misunderstanding of the parties as to the meaning of the paper made in 1880, it was never wholly adopted by the parties thereto. The agreement of 1880 was made to settle the controversy existing between the administrator on the one side, and Thomas and Ann Jenkins on the other and not between the minor and administrator as to any controversy between them, and it should be construed so as to carry out the objects of the parties. If the legal title to the lots at that time was in the estate of John A. Jenkins, deceased, it descended to the heirs, subject to the right of administration and the payment of the debts of the deceased. It would be a fraud on the creditors and upon the rights of the mother to agree to convey the title to the minor irrespective of their rights. Notwithstanding such agreement of 1880, creditors would still have the right to have the property sold to pay the debts. The administrator reported to the court that the agreement of 1880 was not wholly adopted. The disputes kept up until the 1881 agreement was made Ann and Thomas Jenkins still remained in possession of the premises until after the agreement of 1881, so that it is probable that the intention of the parties in executing the agreement of 1880 was to settle the rights of the parties as to the ownership, and not to change the character of the ownership from that of heir to that of grantee. They all agreed that the legal title was in the name of John A. Jenkins at the time of

his death.   If this was so, then Thomas and Ann Jenkins had no title they could convey to the plaintiff.   In his inventory to the court in 1887 the administrator left out lots 1 and 16, and did not claim them as belonging to the estate, and in his petition for the distribution of the real estate these lots were left out of the schedule.   In the guardianship papers of the plaintiff the guardian, who is the mother of the plaintiff, claimed she was entitled to one-third of the income of the farm in accordance with the agreement in 1881, which claim was inconsistent with the agreement of 1880.   Since 1881 the administrator and guardian have acted under the agreement of 1881, and have practically ignored that of 1880.   In cases where the language used by the parties to a contract is indefinite and ambiguous, and hence of doubtful construction, the practical construction of the parties themselves is entitled to great, if not controlling, influence.   Chicago v. Sheldon, 9 Wall. 54, 19 L. Ed. 594.   It will be remembered that Barnes was appointed administrator in 1879.   At this time Thomas and Ann Jenkins were holding possession of the land adversely, and the statute of limitations commenced to run.   When the agreement of 1880 was made, these parties were in possession.   The actual change in the situation did not occur until 1881.   The statute was therefore running before the agreement of 1880, and continued to run after that agreement was executed, so that the disability of the plaintiff, even if he could take title by the agreement of 1880, did not stop the running of the statute.   The law is well settled that, when the statute of limitations once commences to run, it does not cease to run on account of any subsequent disability, unless such disability comes within the exception of the statute.   13 Am. and Eng. Ency. Law (1 Ed.), 731, 732.   The administrator or trustee having the right to commence suit for the recovery of the property within the time limited by the statute, and having omitted to do so, he

24 Utah—9

is barred from commencing such action against the respondents who are strangers to the estate; and his beneficiary is also barred, and his only remedy, if any, would be against the administrator and his sureties. Whether such liability now exists we do not decide.

The respondents also claim that the appellant is barred by reason of the compromise as evidenced by the agreement of 1881, by which Thomas and Ann Jenkins gave up all claim to lots 2 and 3, and the administrator and guardian gave up to them all claim to lots 1 and 16, and that by retaining possession of lots 2 and 3 under such agreement and compromise, and asserting title thereto, he must be held as confirming the compromise; that he can not repudiate a contract made for his benefit, without returning the property in his possession obtained by and through it. Inasmuch as this case has been determined upon other grounds, we forbear further discussion upon this subject.

The decree of the district court is affirmed, with costs. BASKIN and BARTCH, JJ., concur.