JUDGE HARDIN
delivered the opinion of the court.
Hugh Roberts, sr., died in 1826, leaving a will by which he devised his whole estate which might remain after the payment *102 of debts, consisting of a small tract of land, several slaves, and some personal property, to bis wife, Elizabeth Roberts, for life, and afterward to be equally divided among his “ surviving children.”
The tenant for life lived upon the land till her death, which occurred in 1864, her son, Barnett Roberts, residing with her, and having the management of the farm and such of the slaves and other property as remained in her possession under the will.
The testator had eight children living at his death, part of whom died, leaving issue during the life of Elizabeth Roberts, and none of them survived her except said Barnett Roberts, and Hugh Roberts, jr., Henry Roberts, and America Roberts.
. It appears that about 1838 three of the slaves, named Joe, Milly, and Mary, being of vicious character or ungovernable, were sold to'a slave-trader for $1,225, with the assent or active concurrence of said Elizabeth Roberts and all of the children of her late husband who were then living, and the money was paid to Barnett Roberts to be held subject to the use of .Elizabeth Roberts in lieu of the slaves, and that he kept it with its accumulating interest for many years on loan in the hands of Benson Roberts; and some time afterward a slave named Brice was also sold, and part of the price retained by Barnett Roberts. It seems also that said Barnett, about 1844, purchased from his brother, "William Roberts, such interest as the latter had in remainder in the estate of Hugh Roberts, sr., and that he afterward became the purchaser of the interest of Hugh Roberts, jr.; and that in December, 1858, said Elizabeth transferred to him all her interest in the estate as tenant for life under the will of Hugh Roberts, deceased.
On the 10th day of March, 1865, Barnett Roberts, being then the administrator of the estate of said Elizabeth, brought this suit in equity, seeking a construction of the will of Hugh Roberts, deceased, and the judgment of the court determining *103 the rights of himself and the other devisees in remainder in the estate which remained in his possession. By cross-pleadings, filed by America Roberts and others, they sought to hold the plaintiff responsible for the money in his hands arising from the sales of the slaves; and in his reply he pleaded the statute of limitations in bar of the claim.
The court adjudged that under the will of Hugh Roberts, deceased, his four children, Barnett, Henry, Hugh, and America only, who survived his widow, took the estate remaining at her death; and that, although the money arising from the sale of the slaves came to the plaintiff’s hands, the claim against him for it was barred by limitation.
On this appeal, which is prosecuted by America Roberts alone, the principal question presented for the decision of this court is, did the statute of limitations constitute a bar to the claim for the proceeds of the slaves ?
In Coffey v. Wilkerson, &c., 1 Met. 101, it was held, as we think upon well-settled principles, that where a person holding the life-estate in property converts not merely that estate but the absolute and entire estate in the property to his own use, and that with the effect of defeating the enjoyment of the estate in remainder, he becomes immediately responsible for the act to the persons entitled in remainder, who have a right to recover against him the full value of their estate; and that the cause of action, which consists in the injury to the estate in remainder, accrues as soon as the wrong has been committed, and from that time therefore limitation runs.
But the application of this doctrine must in particular cases depend on the nature of the act of conversion, and its immediate effects on the rights of the persons owning the property in remainder. For if the property be sold, whether by the tenant for life or a volunteer under him, with the assent of the remainder-men, in order that the proceeds may be held in lieu of the property for the ultimate benefit of the owners in *104 remainder, the transaction will constitute an express trust between the holder of the funds and those who will finally be entitled to it; and, as in such a case there is no adverse possession of the funds, the trust will not be barred by any length of time. (Hill on Trustees, 263; Lewin on Trusts and Trustees, 744; 17 B. Monroe, 446.)
It has been often and uniformly ruled that in the case of an express continuing trust the statute of limitations does not begin to run, as against the cestui que trust and in favor of the trustee, until there has been some open express denial of the right of the former, and what amounts to an adverse possession or assertion of right on the part of the latter. (Hill on Trustees, 264; Bohannon’s heirs v. Sthreshley’s executors, 2 B. Mon. 437.)
In this case neither the allegations of the reply, nor the proof as to the receipt and control of the price of the slaves, Joe, Milly, and Mary, by the appellee, import more than that the money came to his hands in pursuance of an arrangement of all the parties interested, to be held in lieu of the slaves, subject to the life-estate of Elizabeth Roberts and the ultimate rights of the devisees in remainder under the will of Hugh Roberts, deceased; and that he so held it notwithstanding the desire of some of the devisees that he should distribute it among them during the life of Elizabeth Roberts.
We are therefore of the opinion that the court erred in adjudging the claim for the proceeds of the slaves, Joe, Milly, and Mary, to be barred by limitation. But as to the balance of the price of the slave Brice, the sums admitted to have been received by the appellant and others of the money derived by the sale of Brice seem to have been in satisfaction of their interest in that fund, and we perceive no sufficient reason for disregarding the adjustment which was made by the parties themselves of that transaction. We are of the opinion also that as Elizabeth Roberts was during her life entitled to *105 the use of the proceeds of the other slaves, her transfer to the appellee operated to relieve him from responsibility for the interest accrued during her life, which he may have received on the original fund of f1,225.
But for the error indicated the judgment as to the appellant is reversed, and the cause remanded for a judgment in conformity to the principles of this opinion.