CASE 70.—ACTION BY W. H. YEAGER'S ADMINISTRATOR AND OTHERS AGAINST THE BANK OF KEN-TUCKY AND ITS SUCCESSOR, THE NATIONAL BANK OF KENTUCKY.—January 9.

# Yeager, &c., v. Bank of Kentucky

Appeal from Jefferson Circuit Court; Chancery Branch; Second Division.

SAMUEL B. KIRBY, Judge.

Judgment for defendant on demurrer, plaintiffs appeal—Affirmed.

1. Wills—Failure to Dispose of Remainder.—Where a testator by his will leaves the income from his estate to his widow during life, but no disposition is made of the remainder after her death, it passes to and vests in his heirs.

2. Remainders—Action by Remaindermen—Accrual of Right of Action—Limitations.—Where defendant bank assisted one entitled to a life estate in some of its stock to sell the stock outright, the owners of a vested remainder therein had a right of action at once, without waiting for the termination of the life estate; and where they did not sue within the period of limitations, after knowledge of the facts, their rights will be barred by the statute.

3. Limitation on Actions—Continuing Trust—Renunciation—Sale for Own Benefit.—A sale by a trustee for hi own interest is a repudiation of the trust, and limitations begin to run against the cestui que trust from the date of the sale; hence, even if the bank was a trustee holding title for the benefit of remaindermen when the stock was sold, there was a renunciation of the trust, in which the bank joined, and a cause of action arose at once in favor of the remaindermen.

BARNETT & BARNETT, BURNETT & BURNETT, JAMES S. MORRIS and HARDIN H. HERR, Attorneys for appellants.

## POINTS AND AUTHORITIES.

1 (a) Statute of limitations do not apply to a continuing and subsisting trust. (Ky. Stats., section 2543; Blake v. Wolfe, 105 Ky., 386; Robinson v. Elam, 90 Ky., 300; Perry on Trust, sections 2, 433 and 260.)

(b) A corporation is compelled to take notice of the contents of the will disposing of its stock. (Stewart v. Firemen's Ins. Co., 43 Md., 564; Marbury, Trustee, v. Ehlen, 72 Md., 2060; Caulkins v. The Gas Co., 85 Tenn., 564.)

(c) A corporation is the trustee for its stockholders. (Wooten v. Railroad Co., 128 N. C., 119; Peck v. Providence Gas Co., 17 R. I., 275.)

2. The fololwing cases are differential from the case at bar: Coffey v. Wilkerson, 1 Met., 101; Edwards v. Woolfolk, 17 B. Monroe, 376; Meeks v. Olphert, 100 U. S., 564; Willson v. Louisville Trust Co., 102 Ky., 522; Wickliffe v. Lexington, 11 B. M., 166; Williams v. Williams' Exrs., 25 Ky. Law Rep. 828, s. c. 76 S. W. 413; Roberts v. Roberts, 7 Bush, 104; C. & O. R. Co. v. Bowler, 9 Bush, 468, 481; Hall v. Ditto, 11 Ky. Law Rep., 667; Blades v. Grant Co. Bank, 111 Ky. 163; Jolly v. Miller, 98 S. W., 326.

3. Where an appellate court expressly leaves questions open for future litigation there is no res judicata as to the questions left open. These questions must be decided on the second appeal. Arnold v. Arnold, 11 B. M., 181; Smith v. Brannin, 79 Ky., 119! Gleason v. Barnett, 106 Ky. 134, second appeal 115 Ky. 895; Park v. Orth, 24 Ky. Law Rep., 2209, s. c. 73 S. W. 1015, second appeal 117 Ky. 781, s. c. 35 Am. & Eng. R. R. Cases (new series), 536; Lewisburg Bank v. Sheffey, 140 U. S., 445; Yeager v. Bank of Kentucky, 127 Ky. —, s. c. 100 S. W. 848, s. c. 30 Ky. Law Rep, 1287.)

ALEX. G. BARRETT for appellee bank.

## PROPOSITIONS AND AUTHORITIES

1. Limitation begins to run against persons entitled in remainder at the date of the wrongful conversion of the trust property, though this occurs before the life tenant's death.

(a) Legal remainders. (Coffey v. Wilkerson, 1 Met., 101.)

(b) Equitable remainders. (Edwards v. Woolfolk, 1, B. Mon., 376; Meeks v. Olpherts, 100 U. S., 564; Willson v. Louisville Trust Co., 102 U. S., 522.)

2. When the trustee sells the trust property in violation of the rights of the cestui que trust the trust is repudiated and there is no longer a continuing and subsisting trust.    (Willson v. Louisville Trust Co., 102 Ky., 522; Wickliffe v. Lexington, 11 B. M., 166; Williams v. Williams' Exor., 25 Ky. Law Rep., 838.)

3. Plaintiff's authorities discussed.

4. This court's opinion on the former appeal of this same action is decisive of the present appeal.    (Yeager v. Bank of Ky., 30 Ky. Law Rep., 1287.)

OPINION OF THE COURT BY JUDGE LASSING— Affirming.

W. H. Yeager, a resident of Jefferson county, Ky., died in 1891. His will was probated in the county court of that county. By the terms of his will his wife, Nannie R. Yeager, was entitled to receive all of the income from the estate during her life. No disposition was made of the remainder of his estate after the death of his wife, and it therefore passed to and vested in his collateral heirs. A portion of his estate consisted of 10 shares of the capital stock of the Bank of Kentucky, and the appellee the National Bank of Kentucky is the successor of the Bank of Kentucky. Some six years after the death of her husband, Nannie R. Yeager, his wife, made known to the bank that she desired to sell these shares of stock, and the bank procured a purchaser for her for said stock. In 1904 Nannie R. Yeager died. This action was instituted against the Bank of Kentucky and the National Bank of Kentucky, seeking to recover of them for the conversion of these shares of stock. General and special demurrers were filed by the defendant banks to this petition, and, the court having sustained both, the plaintiffs appealed, and this court reversed the judgment; the opinion being found in 100 S. W. 848, 30 Ky. Law Rep. 1287. In that opinion two questions

vol. 127—48

are decided: First, that the administrator de bonis non did not have the right to maintain the suit, but that it must be brought in the name of the heirs and remaindermen; and, second, that the statute of limitations, to be available, must be pleaded affirmatively. Upon the return of the case the pleadings were amended, so that the heirs and remaindermen were made parties plaintiff to the action. To the petition as thus amended an answer was filed pleading the statute of limitations. To this answer a reply was filed, denying that the plea of limitation was available, and also stating that the cause of action was on a continuing and subsisting trust. To this reply a demurrer was interposed and sustained. The plaintiffs declining to plead further, their petition was dismissed, and they again appeal.

The question in issue in this case is sharply drawn, the facts all being admitted. For appellee it is contended that the statute of limitations begins to run against remaindermen before the termination of the particular estate. This proposition is denied by appellants. The pleadings show that the sale and transfer of these shares of bank stock was made on February 6, 1897, and that the plaintiffs, appellants, learned of this sale in 1899. The suit was instituted May 13, 1905; hence it is admitted, not only that the sale had been consummated and the title passed to the purchaser by Nannie R. Yeager more than eight years before the institution of this suit, but that appellants had actual notice, more than five years before the institution of their suit, that she had so sold and divested herself of the title to said stock. The petition charges that the bank assisted Mrs. Yeager in selling and transferring this stock, and thereby enabled her to convert it to her own use;

that it was charged with notice of the provision of
the will of her husband, and knew that she had no
power to sell the stock; that such a sale was a con-
structive, if not actual, fraud upon the rights of the
remaindermen in said estate.  The action being based
upon fraud, it is insisted for appellees that section
2515 of the Kentucky Statutes of 1903 applies.  For
appellants it is contended that limitation does not
begin to run from the time of the sale and transfer of
the stock, or from the time that notice of such sale
and transfer was brought home to them, but that it
can only begin to run from the death of the life ten-
ant, as she was entitled to the free use and enjoyment
of the proceeds of such sale during her lifetime.

In the case of Coffey v. Wilkerson, v Metc. 101,
plaintiffs were the owners of some slaves, subject to
the life estate of their father in said slaves. They
alleged that the defendant, Coffey, had purchased
their father's life estate and afterwards sold the abso-
lute title to the slaves to Southern traders, and they
sought to recover of Coffey the value of the slaves
with interest.  The sale to Coffey by their father had
been made more than five years before the action had
been brought, but the action was brought less than
two years after the death of their father.  In passing
upon the right of plaintiffs to maintain that suit, this
court said: ''The tenant for life of slaves, or any
purchaser under him, will be restrained by a court of
equity, on the application of the owners of the estate
in remainder, from doing any act that will jeopardize
their interest, upon the representation of such a state
of case as shows the existence of good grounds to
apprehend that the person holding the life estate
has the commission of such an act in contemplation;
and where, as in this case, the person holding the

life estate converts not merely the life estate, but the
absolute and entire estate, in the property to his own
use, and that with the effect of defeating the enjoy-
ment of the estate in remainder, he becomes imme-
diately responsible for the act to the persons entitled
in remainder, who have a right to recover against
him the full value of their estate. The cause of action
accrues so soon as the wrong has been committed. It
consists in the injury which has been done to the
estate in remainder. It exists independent of the life
estate, and is not affected in any manner by its
termination. An action for the injury can be main-
tained during the existence of the life estate, or after
it has ended; but, as the cause of action accrues at
the time of the conversion, the statute of limitations
runs from that time, and consequently forms a bar
to the present action.'' The case at bar is very
similar to the case from which we have just quoted.
The subject-matter under consideration in the two
cases is the sale of personal trust property. In each
a life estate was created—in the one in favor of the
father of the plaintiffs, and in the present case in
favor of the wife of the decedent. In each case the
property was sold and transferred to the purchaser
more than five years before the institution of the
action seeking its recovery, although in each case
the life tenant had died less than five years before
the institution of the action. We are unable to draw
any distinction or see any difference between the facts
in these two cases. They are as nearly identical as
could well be found.

We are aware that a contrary rule has been adopted
and followed by courts of last resort in some of our
sister States, wherein it is held that the statute of
limitations does not begin to run against remainder-

men until the death of the life tenant; but such is not the rule in this State. Our courts have for a period of more than 50 years followed the rule laid down in Coffey v. Wilkerson, and the principles therein announced have been followed with approval in some of the State courts and in the United States courts; hence the opinion of the lower court must be affirmed, unless, as insisted upon by appellants, this is a continuing and subsisting trust, and therefore not subject to the limitations which would otherwise apply. Practically the same question raised in this case was before this court in the case of Wilson v. Louisville Trust Company, in which case land had been conveyed to one Schrader in trust for Mrs. Phillips for life, with remainder to her children, but no power of sale was conferred upon the trustee. Thereafter the trustee, in 1863, sold 33 acres of this property to one Roth, and conveyed it to him in fee. In 1898 an action was brought to forclose a mortgage executed by Roth, the purchaser, on this 33-acre tract. The land was sold, and the purchaser filed exceptions to the report of sale on the ground that Roth had not only constructive, but actual, notice of the trust, and of the trustee's want of power to sell, and that therefore the equitable remaindermen could recover this land at any time within 15 years after the life tenant's death, which occurred only 3 years prior to the institution of this suit. In that case, as in this, the purchaser charged in his exceptions to the report of sale that Roth, who purchased from the trustee, knew of the existence of the trust, and therefore became a party with the trustee to the wrong done the remaindermen, and pleaded, further, that because the trustee, in his conveyance to Roth, united with Roth in the breach of trust, he was estopped from

suing for the property, and that therefore the remain-
dermen were not affected by the statute of limitations,
but could sue at any time within 15 years after the
death of the life tenant.  In passing upon the excep-
tions, upon appeal to this court, it was said: "It has
been expressly held by this court that, when a trus-
tee holds the legal title to real estate which is barred
by the statute of limitation, the equitable interests
dependent upon it will also be defeated, notwithstand-
ing the cestui que trust is an infant;   *   *   *   and
this seems to be the general rule of construction.  The
question in this case is: Does this rule apply where
the trustee has joined in the conveyance under which
the vendee claims, and does the fact of his having
united in such a conveyance estop him from any pro-
ceedings to recover, notwithstanding such action on
his part?"  The court then quotes, with approval,
from the case of Meeks v. Olpherts, 100 U. S. 566,
25 L. Ed. 735, wherein it is said that, "wherever the
right of action in the trustee is barred by the statute
of limitation, the right of the cestui que trust, which
is represented, is also barred."  And, continuing:
"In this case the right of action accrued to the trus-
tee, who held the legal title for the benefit of all those
beneficially interested, as soon as Roth took posses-
sion.  The vendee has admittedly been in possession
of the land for more than 32 years, holding adversely
both to the trustee and the cestui que trust, and has
obtained by the statute of limitation a complete title
which cannot be disturbed.  Any other construction
would destroy the purpose and intention of the stat-
utes, which are statutes of repose, and the rule 'that,
if one purchases property of a trustee with notice of
the trust, he shall be charged with the same trust in
reference to the property as the trustee from whom

he purchased, even if he pays a valuable considera-
tion, with notice of equitable rights of third persons,
and shall hold the same subject to the equitable inter-
ests of such persons (which is so strongly invoked
by the appellant herein), does not apply to a purely
constructive trust, and such a person may apply the
statute, though in other respects equity will treat
him as if he were the trustee.' By the sale of the
bank stock in 1897 Mrs. Yeager repudiated the trust,
and there was not, nor could there have been, a con-
tinuing and subsisting trust, after the sale of the
stock by her as trustee, for the reason that the trust
relation no longer existed.

Our courts have uniformly held that a sale by the
trustee for his own benefit is a repudiation of the
trust, and from the date of the sale limitation begins
to run in favor of the trustee and against the cestui
que trust. The case of Wickliffe v. Lexington, 11
B. Mon. 155, is an interesting case directly in point.
In 1782 the Virginia Legislature conveyed the land
whereon the city of Lexington now stands to trustees,
who were required to make conveyances to the
settlers on the lots. By contract among themselves
each settler was entitled to one inlot and one outlot.
In 1832 Mrs. Wickliffe brought suit against the city
of Lexington, as successor to the original trustees,
in which she sought, as sole heir of her father, to
recover an inlot and an outlot to which he was entitled
as one of the original settlers. The city claimed in
its answer that an inlot and an outlot had been allotted
to plaintiff's father, and sold by his executrix, and
conveyed to the purchaser by the trustees. Plaintiff
denied the right of the executrix of her father to sell
the lots, and denied the right and authority of the
trustees to convey the title to the purchaser. In re-

viewing this case upon appeal this court said: "If the trustees of the town conveyed the lots to those who had no right to them, although the act was wrongful, and amounted to a breach of trust, yet it conferred no right on the heir at law to demand other lots, although it may have rendered the trustees liable for the value of the lots so improperly conveyed to them. But, if such liability was incurred by the trustees, it cannot be enforced at this late period; more than 40 years having elapsed after the execution of the deeds by them before this suit was instituted. It is argued, however, that in cases of trust there is no limitation, and that the lapse of time does not bar this claim against the city. This doctrine, however, applies alone to cases where there is a direct, express, and subsisting trust of a purely equitable nature, and not in cases where the trust which once existed has been violated, and a suit is brought to obtain redress for the injury resulting from the breach of trust. Had the title to the property still remained with the trustees or their successors in office, they would have held it in trust for those entitled to it, and the doctrine contended for would then have had a direct application in a proceeding against the trustees in a court of chancery to compel them to convey the legal title. But, when they had conveyed away the legal title wrongfully, what trust existed between them and the rightful owner of the lots? The trust had ceased by the execution of the conveyance. The act by which it was terminated had imposed a new liability upon the trustees; but that liability was not in the nature of a trust, either expressed or implied. The trust had been openly renounced, and it no longer subsisted; but in its stead a liability had arisen of a different character, and one that had to be enforced,

if at all, within the time allowed by law for redressing similar injuries by a resort to a proper tribunal for that purpose.'' It will thus be observed that in this case the court held that a sale of the trust property by the trustee, though wrongful, nevertheless operated as a breach of the trust, and that therefore the trust relation between the trustee and the cestui que trust no longer existed. This principle was also recognized in the cases of Williams v. Williams' Ex'r. 25 Ky. Law Rep. 838, 76 S. W. 413, Roberts v. Roberts, 7 Bush, 104; Hall v. Ditto, 11 Ky. Law Rep. 667, 12 S. W. 941, and Blades v. Grant County Bank, 101 Ky. 163, 19 Ky. Law Rep. 340, 40 S. W. 246, 41 S. W. 305.

It is insisted for appellants that, inasmuch as the bank procured a purchaser for this stock and enabled and assisted the life tenant, Mrs. Yeager, to make disposition thereof, it is liable, for the reason that it was a trustee holding the title to this property for the benefit of appellants. The same reasoning that would support the plea of the statute of limitations as to Mrs. Yeager would apply with equal force to the bank. The fact that the bank and Mrs. Yeager acted together in the disposition of this stock does not enlarge appellants' rights, and it is immaterial whether one or both was acting in the capacity of trustee for appellants in its management of this stock. When it was sold, and the trustee had parted with her title thereto, and the stock had been transferred and delivered to the purchaser, there had been a breach of the trust, a renunciation thereof by the trustee, in which the bank joined, and a cause of action at once arose in favor of the remaindermen. With a full knowledge of all of these facts, appellants permitted more than five years to run before they

instituted their suit seeking to recover for its wrongful sale and conversion, and they have thereby lost their right to recover.

Being of opinion that the defendant presented a valid defense in the plea of the statute of limitations, set up in its answer, and the reply being insufficient for the reasons given, the trial court properly sustained the demurrer to the reply.

The judgment is affirmed.