## MANSFIELD v. NEFF, et al.

No. 2491.   Decided July 26, 1913 (134 Pac. 1160).

1. DESCENT AND DISTRIBUTION—PRETERMITTED CHILD—BASTARD—STATUTE. Comp. Laws 1907, section 2761, providing that "when any testator omits to provide . . . for the issue of any deceased child, unless it appears that such omission was intentional," such issue shall inherit as in the absence of a will, does not apply to an illegitimate child of the testator's daughter, as there is no common-law obligation to provide for an illegitimate grandchild.   (Page 269.)

2. DESCENT AND DISTRIBUTION—PRETERMITTED CHILD—CONSTRUCTION OF STATUTE. Comp. Laws 1907, section 2761, providing that, when a testator fails to provide for a child or the issue of a deceased child, such child or issue shall inherit as in the absence of a will, unless it appears that such omission was intentional, is, in a sense, a restriction on the disposition of property by will, and its terms should not be extended by implication.   (Page 269.)

3. BASTARDS—WHO ARE—ISSUE OF PLURAL MARRIAGE—"ILLEGITIMATE CHILD." Under the common law in force in the territory of Utah by virtue of the Organic Act, a child born as the result of a plural marriage entered into according to the usages of the Church of Jesus Christ of Latter Day Saints is illegitimate, unless legitimated by statute.   (Page 269.)

4. BASTARDS—ISSUE OF PLURAL MARRIAGE—LEGITIMATION BY STATUTE. Congressional act of March 22, 1882 (1 Comp. Laws Utah,

·1888, p. 110), known as the Edmunds Law, only legitimated the issue of plural marriages as between themselves and their parents, and it was not until 1896, when Comp. Laws 1907, section 2850, was enacted that such children were legitimated for all purposes; hence such a child could not inherit from its grandfather, who died December 25, 1882.[1]   (Page 270.)

5. BASTARDS—PROPERTY—RIGHT OF INHERITANCE.   The right of inheritance of illegitimate children is purely statutory, and, unless the right is given by statute, no such right exists, because the common law conferred none.   (Page 270.)

6. LIFE ESTATES—ACQUISITION OF TAX TITLE OR ADVERSE POSSESSION BY LIFE TENANT.   A life tenant cannot obtain a tax title as against those entitled to the remainder, or by payment of taxes initiate a right to acquire title by adverse possession, so long as he is in possession as life tenant, nor can he pass to another a greater interest in the land than he himself possesses.   (Page 271.)

7. LIFE ESTATES—ADVERSE POSSESSION—AGAINST ADMINISTRATOR AND HEIRS.   Where the life tenant of land devised by will surrendered possession to a society, which continued in possession after her death, the administrator, with the will annexed in whom the right of possession vested at her death, was bound to take notice of the character of such possession, and after the life tenant's death the society could acquire title by adverse possession.[2]   (Page 271.)

8. ADVERSE POSSESSION—CLAIM OF RIGHT—SUFFICIENCY OF BASIS FOR CLAIM.   A written document transferring the right of possession of land from the remainderman, though not a formal conveyance and impotent to transfer possession before the life tenant's death, is sufficient upon which to base a claim of right to possession as against all the world except the life tenant, and will support title by adverse possession after the life tenant's death.[3]   (Page 273.)

9. ADVERSE POSSESSION—INCLOSURE OF PROPERTY—COMPLIANCE WITH STATUTE—SUFFICIENCY.   Where land claimed by adverse possession was used in connection with an adjoining tract, and both were inclosed together until the adjoining tract was put to different use, when a partition fence was built, constituted a sufficient inclosure of the land under the statute to give title by adverse possession.   (Page 274.)

---

[1] Rohwer v. District Court, 41 Utah, 279, 125 Pac. 671.

[2] Jenkins v. Jensen, 24 Utah, 108, 130, 66 Pac. 773, 91 Am. St. Rep. 783.

[3] Welner v. Stearns, 40 Utah, 185, 120 Pac. 491.

10. CHARITIES—ASSOCIATIONS—RIGHT TO ACQUIRE AND HOLD PROP-
ERTY. An unincorporated charitable association may, in the
absence of any statute forbidding, acquire and hold real and
personal property by purchase, gift, bequest, or otherwise.
(Page 274.)

11. CORPORATIONS—RESTRICTIONS ON AMOUNT OF PROPERTY THAT
MAY BE OWNED—WHO MAY TAKE ADVANTAGE OF. Restrictions
imposed upon the amount of property a corporation may hold
can only be taken advantage of in direct proceedings by the
state, and they cannot be taken advantage of by persons claim-
ing through the alleged heir of a testator who devised land to a
corporation so restricted.[4] (Page 275.)

12. CORPORATIONS—RESTRICTIONS UPON HOLDING REAL ESTATE—CON-
VEYANCES BY. Though a corporation or an individual may not
legally be entitled to hold real estate, nevertheless he may be
a conduit to pass title, or may obtain property and pass good
title thereto to one legally authorized to acquire and hold it.
(Page 276.)

13. ADVERSE POSSESSION—HOW ESTABLISHED—SUFFICIENCY. Where
for more than seven years a society was in the open, notorious,
and disturbed adverse possession under claim of right of
land properly inclosed as provided by statute, and paid the
taxes and made improvements, the administrator and heirs of
the testator through whose will it claimed having full oppor-
tunity to make their rights known, and failing therein, title
was established by adverse possession. (Page 276.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Matthew W. Mansfield, as administrator of the estate of John Haslam, deceased, against Ann Eliza B. Neff, and others, and proceedings by Ann Eliza B. Neff, and others for the distribution of the real estate of said decedent, which actions were consolidated and tried together.

Judgment for the said Ann Eliza B. Neff, and others. Matthew W. Mansfield appeals.

AFFIRMED.

---

[4] Booth & Co. v. Weigand, 30 Utah, 135, 83 Pac. 734, 10 L. R. A. (N. S.) 693.

*A. Duncan* and *Stanley Hanks* for appellant.

*Stokes & Bagley, John M. Cannon* and *J. H. Hurd* for respondents.

### APPELLANT'S POINTS.

The fact that the life tenant permits the taxes to become delinquent and the land to be sold and buys the title later does not give her a title any better than she had before, and that for her life only.     (*Watkins v. Green*, 101 Mich. 439.) A life tenant who allows the property to be sold for taxes cannot acquire a title adverse to the remainderman or reversioner by purchase at the sale or by receiving a release of the title acquired by another.     (16 Cyc. 617; *Pruit v. Holly*, 75 Ala. 369; *Ollman v. Kellgore*, 52 Iowa 36; *Monger v. Caruthers*, 57 Kan. 525; *Stewart v. Mathney*, 66 Miss. 21; *Cook v. Presser*, 14 Ohio Circuit Court, 137; *Archer v. Brecksmidt*, 5 Ohio, S. & R. E. Pl. Dec. 348, 5 Ohio N. P. 549; *Lyman v. Hollister*, 12 Vt. 407; *Chaplain v. U. S.*, 29 Ct. C. I. 231; *Patrick v. Sherwood*, 18 Fed. Cases. No. 10804; Note 31: *Varney v. Stevens*, 22 Me. 331.)

The relation of a life tenant to the remainderman or reversioner is usually termed that of a trustee, or as explained by some of the decisions, a *quasi* trustee.  He is a trustee in the sense that he can not injure or dispose of the property to the injury of the rights of the remainderman, or acquire an outstanding title for his own exclusive benefit; but he differs from a trustee of a pure trust in that he may use the property for his exclusive benefit and take all of the income and profits.  In general a life tenant can do nothing during the continuance of the life estate to impair the estate in remainder, and on the other hand the remainderman cannot do any act which will affect the life estate.  (16 Cyc. 617, and cases cited.)  The reason for the rule is based upon the fact that the remainderman or reversioner can not, during the life of the person holding the life estate, bring an action against the person in posses-

sion to recover the possession of the premises. (1 Cyc. 1057; *Wallace v. Jones,* 93 Ga. 419; *Rhon v. Harris,* 130 Ill. 525; *Barrett v. Strad.* 73 Wis. 385; *Mettler v. Miller,* 129 Ill. 630.) The possession of the life tenant, or his vendee, during the continuance of the life tenancy, is in contemplation of law, the possession of the remainderman or reversioner. (*Mettler v. Miller,* 129 Ill. 630; *Clark v. Parsons,* 69 N. H. 147.) Thus a tenant for life cannot debar the rights of the remainderman by a surrender or a release, or by any other voluntary acts for merging the lesser estate in the greater. (*Moore v. Luce,* 29 Pa. 260.)

## RESPONDENTS' POINTS.

It is elementary that the probate of a will is not impeachable collaterally. (1 Woerner, Adm., 498.) As to omitted children under a statute like our own it is held that the will is void and it follows, therefore, that a probate of the same must be contested in the manner provided by the statute by any such person who claims any opposition to the will. (1 Und. Wills, 329; *In re Doles Estate* (Cal.), 81 Pac. 533; *Estate of Maxfield,* 74 (Cal.) 384-5.) In the case of the *Estate of Maxfield, supra,* the court expressly holds that any party interested in the estate who was under no disability at the time of the admission of the will to probate cannot contest its validity or the validity of any of its terms in the proceedings for the settlement of the estate, after the expiration of one year from time the will was probated. (*State ex rel. Reuf v. District Court* (Mont.), 6 L. R. A. (N. S.) 617, (85 Pac. 866); *Estate of Davis,* 136 Cal. 590, 59 Pac. 412; *Tracy v. Muir,* 151 Cal. 318, 86 Pac. 183.) The effect of the probate of the will is to vest title under it in the devisees. After probate the will may be offered as evidence of title and is admissible in ejectment. (*Long v. Patten,* 154 U. S. 573; Tiedeman Real Prop, 5892; *State ex rel. Ruef, v. Dist. Court, supra;* Adamson Eject., 71; 15 Cyc. 38; *Dunn v. Peterson,* 4 Wash., 170.)

Where a widow remained in occupation of her deceased husband's residence for many years, claiming ownership, it was held by the Supreme Court of the United States that her possession was adverse to the heirs. (*Hogan v. Kurtz,* 94 U. S. 773; *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584; *Lowery v. Davis,* (Ala.) 8 So. Rep. 79.)

An unincorporated charitable society may take and hold real estate by gift, devise, deed, adverse possession or in any other manner by which the title or possession of real property may be taken or held by any other person. (25 Am. & Eng. Ency. of Law, 1132-3; *Phipps v. Jones,* 20 Pa. 260; 5 id 918; 59 Am. Dec. 708; Beach on Private Corporations, vol. 1, p. 618; *Byam v. Bickford,* 140 Mass. 31; *Burr v. Smith,* 7 Vt. 241; 29 Am. Dec. 154; *Dye v. Beaver Creek Church,* 48 So. Carolina 444; *Burbanks v. Whitney,* 24 Pick 146; 35 Am. Dec. 312; *Beatty and Ritchie v. Kurtz et al,* 2 Pet. (U. S.) 566; *Beurhaus v. City of Watertown,* 94 Wis. 617; *White v. Rice,* 112 Mich. 403; *American Bible Society v. American Tract Society,* 62 N. J. Eq. 219.) Not only may charitable societies take and hold property, but the courts will, where a bequest or conveyance is made for charitable purposes, carry out the terms thereof even though no trustee is named, and will if necessary appoint a trustee to do so, or devote the property or fund to analogous purposes. (*U. S. v. Late Corp. Church of Jesus Christ of Latter Day Saints,* 136 U. S. 1; 3 Pom. Eq. Sections 1025-26; 1 Underhill on Wills, Section 71.)

FRICK, J.

The plaintiff, as administrator, with the will annexed, of the estate of John Haslam, deceased, brought this action in the district court of Salt Lake County to quiet the title to certain real estate in the alleged heirs of said deceased, of whom the plaintiff claimed to be one. At the same time, in the same court, another proceeding was pending, in which a distribution of said real estate was asked by the assignee of of the devisee named in the last will of decedent. The two actions were tried together, and are so presented here.

The pleadings and evidence are fairly reflected in the findings of fact made by the district court, which, in substance, are as follows:

The decedent, John Haslam, on the 25th day of December, 1882, was seised of the real estate involved in this action, which is fully described in the complaint and in the findings of fact; that said Haslam, on the day last aforesaid, died in Salt Lake County, leaving a last will and testament, and also leaving surviving him his wife, Ann Arnold Haslam, and also leaving surviving him his plural wife, Sarah Ann Haslam, the latter of whom, it is found, he married "according to the usages of the Church of Jesus Christ of Latter Day Saints," commonly called the Mormon church; that in said will he devised all of his real estate, about thirty acres, more or less, to said wives "for their joint use and benefit and to the survivor of them for life" and the remainder in fee to the church aforesaid. The testator also bequeathed all of his personal property (not of great value) to said wives, share and share alike.

The court further found "that the said last will and testament was, by order of the probate court of Salt Lake County, State (territory) of Utah, duly and regularly admitted to probate on the 4th day of May, 1893," and letters of administration, with the will annexed, were duly issued to the plaintiff, who qualified as such administrator, "and has ever since continued to act as such;" that said Ann Arnold Haslam died at Salt Lake County in April, 1884, and said Sarah Ann Haslam died there in April, 1900; that taxes were duly levied and assessed against a portion of said real estate for the year 1892, and, the same not having been paid, said land was sold for taxes to said Sarah Ann Haslam, and thereafter, no redemption having been made for said sale, a tax deed was issued to her, whereby said land was conveyed to her; that for a number of years prior to her death said Sarah Ann Haslam, being old (nearly ninety years), infirm, and in poor health, without means of support, requiring constant attention and financial assistance, "during all of said time (the last few years of her life)

the relief society mentioned in the title of this case and its members, the defendants herein, other than the defendant James M. Fisher, Jr., took care of, nursed, attended, and supported the said Sarah Ann Haslam, in consideration of which said care, attention, and support she agreed to give all of said property mentioned and described in the first finding of fact to the defendant society and its said members, and that on or about the 1st day of April, 1895, she did deliver and surrender the possession thereof to the said Ann Eliza B. Neff, Amelia Fisher, and Lydia King (defendants herein), as members and in trust for the said defendant relief society, and that ever since said date and for more than seven years next preceding the commencement of this action the said relief society and its said members have continued, without disturbance or interruption, in the exclusive possession and occupation of said premises, and have during all of said time and ever since said date, farmed, cultivated, used, and occupied, and improved said premises to the exclusion of said plaintiff and those whom he represents, and that said possession has during all of said time been open, notorious, continuous, actual, and adverse against the plaintiff and those whom he claims to represent as well as against any and all other persons under claim of right and title in fee simple, with the full knowledge, acquiescence, and consent on the part of said plaintiff, and that the said defendant society and the said members have had all of said premises during said time under a substantial inclosure, and have also paid all the taxes levied or assessed against said property for each and every year since the aforesaid date (1895) and for more than seven years prior to the commencement of this action" (September 26, 1908). Then follows a description of the real estate claimed as aforesaid.

It is further found that on June 10, 1909, the said church, as the devisee in the will aforesaid, "duly granted, bargained, and sold unto the defendant Ann Eliza B. Neff, president of the relief society, . . . in trust for the use and benefit of said society all of the right, title, claim, and interest of said church in and to all of said real property mentioned

and described in said first finding of fact, and particularly all of the right, title, claim, and interest which it, the said church, had or might become entitled to under or by reason or in any manner growing out of the said will of the said John Haslam, deceased. That the relief society, . . . is a duly and regularly organized, voluntary, religious, and charitable society, . . . existing in accordance with the usages of said church in substantially all the wards, localities, and communities where said church exists, and is an integral part of the ecclesiastical polity of said church for carrying on certain parts of the religious and charitable work thereof, and recognized as such by the general authorities of said church, and that the defendant relief society . . . is and has been such a society duly organized and existing for more than thirty-five years prior to the commencement of said action, and consisting at all times of an actual, definite, and ascertainable membership preserved by a membership roll thereof; that the object, aim, and purpose of such society has at all times been and now is to administer aid and to care for the poor, distressed, and indigent members of said church and other persons residing in said East Mill Creek ward who may at any time require charitable support or assistance, the said society having at all times a duly elected, qualified, and acting quorum of officers, consisting of three persons, to wit, a president and two assistants, with authority from the members of said society to govern, manage, and control its affairs;" that said "Ann Eliza B. Neff having, ever since its organization, been the president thereof, and the defendants Amelia Fisher and Lydia King being now, and for many years last past have been, the two assistants to said president, constituting, with the said president, the said full committee or board of trustees of said society"; that ever since about the 1st day of April, 1895, the defendant James M. Fisher, Jr., has cultivated, farmed, used, and improved said real estate, "as a tenant of the other said defendants"; that the "Church of Jesus Christ of Latter Day Saints was duly incorporated by special act of the legislature of the Territory of Utah

. . . on the 19th day of January, 1855, and the said corporation was dissolved and disincorporated by special act of Congress of the United States on the 3d day of March, A. D. 1887."

The evidence also showed without conflict, that the property of said church, by an act of Congress, was escheated to the United States, and that thereafter, by a joint resolution of Congress, said property was restored to said church; that during all of the years since the organization of said church down to the day of trial said church had acquired, owned, used, and disposed of both real and personal property; that the usual and regular method of conveying real property was by deed signed by the trustee in trust or by those local trustees in whom the title to the property was vested and held for charitable or church purposes; that the property in question was conveyed by deed by the trustee in trust of said church in the usual manner to the defendant society; and that, prior to the formal conveyance thereof as aforesaid, the church authorities, by a written document, to wit, on December 21, 1898, had turned over said property to said society, which act was confirmed by a formal conveyance by deed in 1909 as aforesaid.

It was also made to appear that the decedent, John Haslam, had one daughter, who was the plural wife of one Mathew Mansfield, the latter being the father of the plaintiff herein; that said daughter died in 1870, before the death of her father, leaving surviving her as the fruit of said plural marriage a son named John M. Mansfield, who died intestate and without issue in 1884, leaving surviving him his father, Mathew Mansfield, the plaintiff, a half-brother, and two half-sisters; that the Mathew Mansfield aforesaid died in 1891, leaving surviving him the plaintiff and his two sisters aforesaid, one of the sisters having since died, leaving surviving her a number of children; that the plaintiff and said sister and the children of the deceased sister claimed said property as heirs of John M. Mansfield, who, it is contended, was the sole heir of his mother, she being the heir of John Haslam, deceased.

The evidence also showed that the plaintiff, after he was appointed administrator, to wit, in 1895, redeemed a small portion of the real estate in question from a tax sale for taxes levied and assessed for the year 1893; that thereafter he paid no further attention to said land and did nothing whatever with respect thereto until 1908, when he brought this action, and in 1909, after bringing the action, filed an inventory, in which he listed the real estate in question as being all of the property belonging to said estate, and at which time he also published notice to creditors.

It was also made to appear that the relief society had planted over 1500 fruit trees upon the real estate in question since it took possession of it, and that the same, or the proceeds thereof, was being devoted to charitable purposes.

The court, upon the findings and evidence aforesaid, made conclusions of law, in which it denied the claim of the plaintiff, and found that the relief society was the owner and entitled to the possession of said real estate, and was also entitled to a decree quieting the title thereto in it; that the defendant James M. Fisher, Jr., was entitled to a judgment dismissing the complaint as against him, and that the defendants recover costs. A decree in conformity with said conclusions of law was accordingly entered, from which plaintiff appeals.

Appellant, in several particulars, assails the findings of the court upon the ground that they are not supported by or are against the weight of the evidence. It is impracticable for us to set forth the evidence, even in substance, and all we can say with respect thereto is that, after carefully reading all of the evidence certified up in the bill of exceptions, we are well satisfied that the findings of fact are not only sustained by the evidence, but, with the exceptions of a few unimportant matters, are in strict accord with the great weight thereof.

The principal contentions made by appellant, however, are based upon questions of law. He contends that he and his sister still living, and the issue of the sister now deceased, are entitled to the property in question as the heirs of

their father, Mathew Mansfield; that the latter was the heir of John M. Mansfield, who was his son by his plural wife, Margaret Haslam, the only daughter of John Haslam, deceased. In this connection it is contended that under our statute (Comp. Laws 1907, section 2761, which was in force when John Haslam made his will, and has continued in force ever since) the will is of no force or effect as against John M. Mansfield. Said section reads as follows:

"When any testator omits to provide in his will for any of his children or for the issue of any deceased child, unless it appears that such omission was intentional, such child or the issue of such child must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section."

John M. Mansfield, it is contended, comes within the provisions of said section, because he was the only child and representative of John Haslam's only daughter, who was dead when the will was made and became effective.

We cannot yield assent to these contentions. Under the common law, which was in force in the territory of Utah by virtue of the Organic Act, John M. Mansfield was an illegitimate child, because he was the fruit of a plural and not of a legal marriage. If he was an illegitimate child, then he does not come within either the letter or the spirit of said section. The section was copied from the statutes of Massachusetts, and this identical question was squarely determined against appellant's contentions by the Supreme Judicial Court of that state as early as 1854 in the case of *Kent v. Barker,* 2 Gray (Mass.) 535. It was there held that the statute applies only to grandchildren who are conceived and born as the fruit of lawful marriage. Such a conclusion is reasonable. The statute is, in one sense, a restriction upon the right of disposition of property by will, and hence its terms should not be extended by implication. A grandfather, under the common law, certainly was under no legal obligation to provide for an illegitimate grandchild, nor was such a child, under that law, an heir of his grand-

parent, and, if he was not, the statute could not have been intended for his protection.

This is clearly the logic of the case of *Estate of Wardell,* 57 Cal. 484, where it is held that the provisions apply as between the mother and her illegitimate child, for the reason that such a child was the heir of the mother. The California case is therefore a negative authority for the respondents.

It is contended, however, that the statute applied to John M. Mansfield, for the reason that, under the congressional act of March 22, 1882, known as the Edmunds Law (1 C. L. Utah 1888, p. 110), the issue of plural marriages born before the 1st day of January, 1883, **4, 5** were legitimated. While it is true that the testator died in 1882, some time after the passage of the Edmunds Law, we think that by that act the status of illegitimate children was intended to be affected only as between themselves and their parents. It was not until the legislature of this state in 1896 (Comp. Laws 1907, section 2850) passed a law, much more sweeping in its scope and effect, that the children who were born prior to January 4, 1896, as the fruit of plural marriages, were legitimated for all purposes. See *Rohwer v. District Court,* 41 Utah, 279, 125 Pac. 671, where we held that it was only after the statute of 1896, and the other statutes there menioned, and not otherwise, that a father could inherit from his illegitimate child. The views held by the majority of this court in the Rohwer Case are fully supported by the Supreme Court of the United States in *Cope v. Cope,* 137 U. S. 682, 11 Sup. Ct. 222, 34 L. Ed. 832. There is, however, nothing said in either one of those cases from which it can logically be inferred that the right of inheritance of illegitimate children was extended so as to make them heirs of their grandparents. The right of inheritance of illegitimate children is purely statutory, and, unless the right is given by statute, no such right exists, because the common law conferred none.

We are of the opinion, therefore, that neither John M. Mansfield nor his father, nor the latter's heirs, can assail

the will of John Haslam, because it was not made to appear
that the latter had intentionally excluded John M. Mans-
field from the will, for the reason that the latter was not an
heir of John Haslam at he time of the latter's death, or at
any other time.

By what we have said we do not wish to be understood
as holding that, in order to avail himself of the provisions
of the statute, an heir need not oppose the probate of the
will, or must not, within the time fixed by our statute, at-
tack the probate thereof, in case he desires to have the will
held void as to him, or that he may assail the will collaterally
in a proceeding like the present. These questions are not
necessary to a decision of this case, and hence we express no
opinion upon them.

In our judgment, appellant's contentions must fail for
still another reason. The respondent relief society claimed
ownership of the property in question both by deed of con-
veyance from the devisee in the will and by adverse
possession. We need not now pause to demonstrate    **6, 7**
that the relief society obtained the legal paper title to
the land in question, since it is quite sufficient, so far as
appellant and those whom he represents are concerned, if
it be shown that the society has obtained the legal title
from any source. We are of the opinion that under our
statute the society has acquired an unassailable title by ad-
verse possession. It is quite true, as contended for by ap-
pellant, that, inasmuch as the plural wives were merely
life tenants, they, while such tenancy existed, neither could
obtain a tax title as against heirs, nor by payment of taxes
initiate a right to acquire title by adverse possession as
against the heirs, so long as the former were in possession
as life tenants. It is also true that neither of the plural
wives could surrender or grant a greater interest in the land
than they possessed.

But the relief society is not required to base its claim of
adverse possession upon what occurred prior to April, 1900,
and, prior to the death of the survivor. As we have seen,
appellant was the duly appointed and acting administrator,

with the will annexed, and had been such for more than seven years when the survivor died. Under our statute, immediately after appointment the legal, that is, the constructive, possession of real estate passes to the administrator for the benefit of those who are ultimately entitled to the estate. If it be assumed, as it must be, that during the lifetime of the surviving life tenant the administrator could in no way interfere with the possession of the tenant nor with the possession of any one claiming under such tenant, and that he was not required to pay the taxes during that time, yet, upon the death of the life tenant, the right of possession, by force of our statute, was immediately vested in the appellant, as administrator, with the will annexed. If, therefore, any one else was in actual possession of the property, which possession was open and notorious, the administrator, as well as all the world, was required not only to take notice of such possession but also of all the legal consequences thereof. The administrator, therefore, had the means of knowing, if he did not actually know, that the relief society claimed possession of the premises under a claim of right; that it had paid all of the taxes ever since 1893, and was continuing to pay them; that it had reduced at least a portion of the property from an unimproved to an improved state by cultivating it and by planting fruit trees thereon, and was constantly continuing to do so, and, in connection therewith, was continuing to pay all the taxes that were being levied and assessed against the property. If, therefore, the administrator could infer that the possession and use of the property and the payment of taxes thereon prior to 1900 were done in the interest and for the benefit of the surviving life tenant, he had absolutely no right to deduce such an inference from those acts after that year, since the only surviving life tenant was dead, and had no longer any right of possession, and could not have transmitted such right to any one else. From the time of her death, therefore, the administrator was put upon notice that the property in question was being used for the same purposes by the relief society that the owners of similar prop-

erty in the vicinity used their property. It was his duty, therefore, to inquire by what right or authority the society was continuing the possession and care of the property. Had he done so, he would have learned that the society claimed to be the owner of the property as the transferee of the devisee under the will, namely, the Church of Jesus Christ of Latter Day Saints. If appellant then thought that such church had no title or right to the property, he could have tested the matter by bringing an action against the relief society. He did not do so, but permitted the society to remain in open, notorious, and undisturbed possession for more than eight years after the death of the surviving life tenant, during all of which time the society continued to use and improve the property and to pay the taxes thereon, so that at the time of the trial it had paid the taxes for seventeen consecutive years, eight of which were after the death of the surviving life tenant and before the commencement of this action. The court's finding, therefore, that the plaintiff society had complied with the conditions of our statute with respect to the payment of taxes is not only justified by the evidence, but the finding could not rightfully have been otherwise.

Nor can there be any doubt that the possession and use of the property and the payment of taxes thereon were under claim of right, and that such claim was adverse to all the world. The evidence is conclusive that as early as 1898 the church authorities, in a written document, transferred the right of possession of the property to the relief society for charitable purposes, and that that society **8** then accepted the same for such purposes. That document, although not a legal conveyance and impotent to transfer the immediate right to possession, was, nevertheless, sufficient upon which to base a claim of right to possession as against all the world, except the rights of the surviving tenant. The deed of conveyance which was made and delivered by the church authorities in 1909, after this action was commenced, was therefore nothing more than a con-

firmation of the equitable right which was initiated by the delivery of the written document in 1898 that we have referred to. · Upon the question that the document aforesaid could be used as a basis for a claim of adverse possession, the case at bar is not distinguishable from the case of *Welner v. Stearns,* 40 Utah, 185, 120 Pac. 491.

Nor can the contention prevail that our statute relating to adverse possession was not complied with in that the land was not inclosed by a substantial fence or inclosure. In that regard it was made to appear that a portion of the land was being used as pasture land in connection with a small parcel of land owned by a third person, and that said two parcels were inclosed together in one tract and one field, and so ·continued to be until the owner of the small portion desired to put his land to a different use, when a partition fence was run on the boundary line between the two parcels aforesaid. While the partition fence had not been erected for the full period of seven years, yet, in view of the use of the property and the manner in which it was inclosed, we have no hesitancy in saying that the spirit, if not the very letter, of our statute was fully met, and the court was right in finding that the land was inclosed.

Upon the question of adverse possession by a stranger against the administrator, this case is controlled by the case of *Jenkins v. Jensen,* 24 Utah, 108-130, 66 Pac. 773, 91 Am. St. Rep. 783. But it is further contended that the relief society, not being a body corporate, could not acquire or hold real estate. The district court very fully found the facts with respect to the character of the relief society, and the purposes for which it acquires property generally, and for which it acquired and seeks to· hold the property in question. Under those findings the relief society is clearly a voluntary association or society which was organized and exists for charitable purposes only. The law is too well settled to require extended discussion or review of the cases to show that unincorporated, voluntary charitable associations or societies, in the absence

of a statute forbidding, are, and for centuries have been, held capable of taking, acquiring, and holding property both real and personal, by purchase, gift, bequest, or otherwise. We shall do no more than refer to a few of the many cases that could be cited. *Estate of Winchester,* 133 Cal. 271, 65 Pac. 475, 54 L. R. A. 281; *Mannix v. Purcell,* 46 Ohio St. 102, 19 N. E. 572, 2 L. R. A. 753, 15 Am. St. Rep. 562; *Hadden v. Dandy,* 51 N. J. Eq. 154, 26 Atl. 464, 32 L. R. A. 625; *Methodist Church v. Remington,* 1 Watts (Pa.) 219, 26 Am. Dec. 61; *Town of Paulet v. Clark,* 9 Cranch, 292, 3 L. Ed. 735; *Terrett v. Taylor,* 9 Cranch, 43, 3 L. Ed. 650; *Vandervolgen v. Yates,* 3 Barb. Ch. (N. Y.) 242.

In this connection appellant also contends that the devise over to the Church of Jesus Christ of Latter Day Saints was void, because it was shown by the evidence that at the time the bequest was made or became effective the church already held more property than it was authorized to hold under the territorial statute. The law upon that question is also well settled adversely to appellant's contention. The rule is well stated by the Supreme Court of the United States in the headnote to the case of *Jones v. Habersham,* 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401, thus:

"Restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the state."

This statement of the law is fully supported by the following cases: *Bogardus v. Trinity Church,* 4 Sandf. Ch. (N. Y.) 633; *Church of Redemption v. Grace Church,* 68 N. Y. 570; *De Camp v. Dobbins,* 29 N. J. Eq. 36; *Davis v. Old Colony R. R. Co.,* 131 Mass. 258-273, 41 Am. Rep. 221. The principle is also recognized by this court in *Booth & Co. v. Weigand,* 30 Utah, 135, 83 Pac. 734, 10 L. R. A. (N. S.) 693.

It is also squarely held by the Supreme Court of the United States in *Smith v. Sheeley,* 12 Wall. 358, 20 L. Ed. 430, that, although the grantor may not legally be entitled to hold real estate, he, nevertheless, may be a conduit to pass title, or may obtain the property and pass a good title thereto to one who is legally authorized to acquire and hold it. But, as we said in the opening of this opinion, it is not necessary in this case to determine the legal rights the church had to the property, except in so far as the claims of the church may be important and material in giving color to the claim of the relief society that it claimed title to the property by adverse possession at the time of the commencement of this action, and it was for the purpose of illuminating that proposition, and for no other, that we have discussed the church's claim to the property.

In this case we have arrived at the conclusions reached with less hesitancy because the claim of adverse possession is as well founded as it is clearly established by the evidence. The administrator and both of the sisters, all of whom were of full age, either actually knew or had the means of knowing that the property was claimed adversely to them, and that all the improvements thereon were being made under such a claim. It further is very clearly shown that the income of the property in question, including the personal property bequeathed to the life tenants, was grossly inadequate to supply their wants, in view of the fact that one of them lived long after the death of the testator, that the relief society for years had assisted the latter, and finally had taken care of the survivor of the two, who stood in constant need of such care during the last years of her life, and when she had attained the age of nearly ninety years. The administrator apparently took no interest in the property or its care for more than fifteen years, and did not file an inventory nor publish notice to creditors until more than sixteen years after he was appointed. He must therefore rely entirely upon his legal rights, and, if he never had any, or if those he had have

become stale by lapse of time, he and those whom he represents must suffer the consequences.

For the reason stated, the judgment of the district court is affirmed, with costs to respondents.

McCARTY, C. J., and STRAUP, J., concur.